ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
CHANEL, INC.,

        Plaintiff,

  - against -

WGACA, LLC, WHAT COMES AROUND GOES
AROUND LLC d/b/a WHAT GOES AROUND
COMES AROUND, MHW PROPERTIES, INC.,
WGACA WEB, LLC, PINES VINTAGE,
INC., VINTAGE DESIGNS LTD., WCAGA
LA, LLC, and Individuals SETH
WEISSER and GERARD MAIONE,

        Defendants.
- - - - - - - - - - - - - - - - - -X



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/14/18

18 Civ. 2253 (LLS)

OPINION & ORDER

    In this action, Chanel, Inc. ("Chanel") asserts several claims under the Lanham Act and New York law for the defendants' use of the Chanel trademark and brand, complaining that WGACA's advertising and marketing improperly trade on Chanel's famous brand and trademark to create the false impression that WGACA is affiliated with Chanel or that Chanel endorses its products.

    The defendants move to dismiss the amended complaint (Dkt. No. 28) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 49). For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND[1]

### *Parties*

Chanel is a premier seller of luxury consumer products that include bags, shoes, jewelry, sunglasses, and accessories. It owns all rights to several Chanel and CC monogram trademarks on handbags and accessories. Chanel sells hundreds of millions of dollars' worth of consumer goods annually through its own retail stores and website, and through certain authorized specialty retail stores and their websites.

The defendants are the companies and individuals that operate WGACA,[2] a business that describes itself as "the leading global purveyor of authentic luxury vintage accessories and apparel." The individual defendants, Seth Weisser and Gerard Maione, own and control WGACA.

### *WGACA's Conduct*

WGACA sells secondhand Chanel-branded products in its retail stores and on its website. It uses the Chanel trademark and brand in its advertising and promotions, although WGACA is not an authorized Chanel retailer or affiliated with Chanel.

---

[1] The following facts are taken from the amended complaint and documents attached to or integral to the amended complaint. See Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236, 247-48 (2d Cir. 2017).

[2] For "What Goes Around Comes Around." Adopted to designate secondhand wares.

The amended complaint alleges that its use of the Chanel trademark misleads consumers into thinking that WGACA's sales are affiliated with or sponsored by Chanel.

Retail Stores. WGACA's retail stores prominently feature the Chanel brand. Its store in East Hampton is decorated with a facsimile of a giant Chanel No. 5 perfume bottle as a promotional advertisement, and the sign in front of its SoHo store lists several brands, but lists "Vintage Chanel" at the top of the sign in larger print than the other brands, and its window display items are all Chanel-branded.

Website. The WGACA website offers products of at least seven luxury brands as well as Chanel, but offers more Chanel-branded products for sale than those of any other brand. The website's home page features a sale of Chanel-branded handbags, accessories, apparel, and jewelry. Under the non-alphabetical heading "Shop by Brand," Chanel is listed first.

Social Media. WGACA's social media pages include quotations of Coco Chanel, photographs of Chanel-branded products, and photographs of models and public-opinion influencers wearing or carrying Chanel handbags, including photographs from previous Chanel advertisements. They tag photos of Chanel-branded products with the hashtag

"#WGACACHANEL" and refer to Chanel-branded products as "our #WGACACHANEL." A representative post on Instagram follows:



Authentication. WGACA's website contains a section titled "Authenticity Guaranteed," which states, "Any piece purchased at What Goes Around Comes Around or one of our retail partners has been carefully selected, inspected and is guaranteed authentic." WGACA also provides letters of authenticity to its customers, such as one which reads, "This letter confirms that item Q6HCHK00KB000 Chanel Black Long Tissue Box is an authentic Chanel decoration."

In fact, Chanel has not inspected or authenticated WGACA's inventory.

### *Chanel's Claims*

Chanel asserts claims for violations of the Lanham Act (trademark infringement, false advertising, and false endorsement/unfair competition) and for violation of New York law (common law unfair competition, deceptive business practices, and false advertising). It seeks an injunction against WGACA misleading customers into believing that WGACA has any affiliation or association with Chanel, or that Chanel has approved of or authenticated the Chanel-branded items being sold by WGACA.

WGACA moves for dismissal, arguing that the lawsuit is an impermissible attempt by Chanel to bar the legitimate resale of its products, and that WGACA uses the Chanel trademarks simply to identify its products, and does not claim any affiliation or sponsorship by Chanel.

### STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## DISCUSSION

### *Lanham Act Claims*

The Lanham Act claims for (i) counterfeiting and trademark infringement under Section 32(1), (ii) false advertising under Section 43(a)(1)(B), and (iii) unfair competition and false endorsement and association under Section 43(a)(1)(A), all rest upon an act of consumer confusion. As the Second Circuit has stated:

> Section 43(a) thus specifically defines misrepresentation causing confusion as to affiliation, association, or sponsorship as infringing activity. A consumer "need not believe that the owner of the mark actually produced the item and placed it on the market" in order to satisfy § 43(a)'s confusion requirement. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 204 (2d Cir. 1979). "The public's belief that the mark's owner *sponsored or otherwise approved* the use of the trademark satisfies the confusion requirement." *Id.* at 205 (emphasis added).

Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 109 (2d Cir. 2010), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014).

Chanel's amended complaint plausibly alleges that WGACA's use of the hashtag #WGACACHANEL infringes Chanel's trademarks. It alleges that WGACA conjoined its acronym with the Chanel trademark to create the impression that WGACA is affiliated with Chanel or is an authorized Chanel retailer. Courts have upheld similar complaints. See Weight Watchers Int'l, Inc. v. Luigino's, Inc., 423 F.3d 137, 144 (2d Cir. 2005) ("the use of the term 'Points' on the front of the package was likely to confuse consumers into believing that Weight Watchers had determined the point values or otherwise endorsed the Luigino's products."); Pub. Impact, LLC v. Boston Consulting Grp., Inc., 169 F. Supp. 3d 278, 294-95 (D. Mass. 2016) (use of the hashtag "#publicimpact" was likely to infringe the plaintiff's "Public Impact" trademark); Fraternity Collection, LLC v. Fargnoli, No. 13 Civ. 664 (CWR), 2015 WL 1486375, at *5-*6 (S.D. Miss. Mar. 31, 2015) (designer's use of plaintiff's "FRATERNITY COLLECTION" trademark in the hashtags "#fratcollection and #fraternitycollection").

Chanel also adequately alleges that WGACA's extensive unauthorized use of the Chanel brand and trademarks constitutes false advertising or endorsement. The amended complaint's allegations that WGACA's advertising and marketing materials imply that its sale of Chanel-branded products is endorsed by

Chanel are based on the use of pictures from Chanel advertising campaigns, the #WGACACHANEL hashtag on social media, and the prominence and large volume of Chanel trademarks that WGACA displays in stores and online. Such extensive use of Chanel's trademarks may form the basis for a Lanham Act violation. See Beastie Boys v. Monster Energy Co., 66 F. Supp. 3d 424, 449 (S.D.N.Y. 2014) (Monster's use of the Beastie Boys' copyrighted music could be used in a false endorsement claim where "Viewers are inundated with visual references to Monster's product, name, and brand.").

The nominative fair use doctrine, which allows use of the plaintiff's trademark solely to identify the plaintiff's goods as long as there is no likelihood of confusion of the markholder's sponsorship or affiliation, does not change this outcome. The Second Circuit has explained how courts should consider nominative fair use:

> We further hold that in cases involving nominative use, in addition to considering the *Polaroid* factors, courts are to consider (1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark; (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship

> between plaintiff's and defendant's products or services.

Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC, 823 F.3d 153, 156 (2d Cir. 2016), cert. denied, 137 S. Ct. 624, 196 L. Ed. 2d 516 (2017). WGACA's use of the Chanel trademarks here may create a likelihood of confusion about Chanel's sponsorship or affiliation. First, WGACA's Chanel-branded items would be readily identifiable as Chanel without the #WGACACHANEL hashtag and the multiple uses of Chanel's name and trademark in the hashtags. Second, WGACA's display of Chanel-branded goods more prominently than other luxury-brand goods makes it plausible that it "step[ped] over the line into a likelihood of confusion by using the senior user's mark too prominently or too often, in terms of size, emphasis, or repetition." Id. at 168 (alteration in original) (citations omitted). Third, the hashtag #WCAGACHANEL and WGACA's guarantees of authentication of themselves may be taken as suggesting sponsorship or endorsement by Chanel.

Nor does the first sale doctrine give WGACA protection. That doctrine applies only where a "purchaser resells a trademarked article under the producer's trademark, and nothing more." S&L Vitamins, Inc. v. Australian Gold, Inc., No. 05 Civ. 1217 (JS), 2006 U.S. Dist. LEXIS 102332, at *14 (E.D.N.Y. Mar. 30, 2006) (quoting Sebastian Int'l, Inc. v. Longs Drug

Stores Corp., 53 F.3d 1073 (9th Cir. 1995)). Here, the amended complaint alleges that WGACA did much more than laconically resell Chanel-branded products: its presentations were consistent with selling on Chanel's behalf.

WGACA's motion to dismiss the Lanham Act claims is denied.

### *State Law Claims*

The three state law claims are: (i) unfair competition under New York common law, (ii) deceptive business practices under Section 349 of the New York General Business Law ("NYGBL"), and (iii) false advertising under Section 350 of the NYGBL. Chanel fails to make the showing of bad faith necessary to sustain its common law unfair competition claim, but adequately pleads claims under the NYGBL for unfair competition and false advertising.

"Under New York law, common law unfair competition claims closely resemble Lanham Act claims except insofar as the state law claim may require an additional element of bad faith or intent." Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 149 (2d Cir. 1997) (citation and internal quotation marks omitted). "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." Star Indus.,

Inc. v. Bacardi & Co., 412 F.3d 373, 388 (2d Cir. 2005) (citation omitted). Although the amended complaint shows that WGACA used Chanel's status in the luxury goods market to sell Chanel-branded products, Chanel does not make any showing that WGACA intended to sow confusion between the two companies' products. If anything, the amended complaint shows that WGACA's intent was to display the Chanel brand conspicuously, and emphasize that their source was Chanel.

Sections 349 and 350 of the NYGBL prohibit, respectively, "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state" and "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." As described above, Chanel's amended complaint alleges that WGACA engaged in many advertising and marketing business practices which could deceive consumers or constitute false advertising: its website may suggest an affiliation or sponsorship with Chanel by prominently displaying Chanel-branded goods and Chanel trademarks, and listing Chanel first on the list of luxury brands; and its representations that its Chanel-branded products were authentic, with its misleading implication that WGACA was authorized by Chanel to make that representation. If so viewed by the trier of fact, those allegations show that

WGACA "is engaging in an act or practice that is deceptive or misleading in a material way." Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 (2002) (citation omitted).

WGACA's motion to dismiss the state law claims is granted as to the one for common law unfair competition, but denied as to the New York statutory claims for deceptive practices and false advertising.

### *The Individual Defendants*

The Second Circuit has explained when New York courts may pierce the corporate veil to hold individuals liable:

> It is well settled that New York courts are reluctant to disregard the corporate entity. Indeed, New York "allows individuals to incorporate for the very purpose of avoiding personal liability."
>
> Thus, the corporate veil will be pierced only when it can be demonstrated that the "[corporate] form has been used to achieve fraud, or when the corporation has been so dominated by an individual ... and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego." A court may consider several factors in making this determination:
>
> (1) the intermingling of corporate and personal funds; (2) undercapitalization of the corporation; and (3) failure to maintain separate books and records or other formal legal requirements for the corporation. While there is no set rule as to how many of these factors must be present in order to pierce the corporate veil, the general principle followed by the courts has been that liability is imposed when doing so would achieve an equitable result.

William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 600-01 (2d Cir. 1989) (alterations in original) (citations omitted). The Court of Appeals of New York has explained what plaintiffs seeking to pierce the corporate veil must show:

> While complete domination of the corporation is the key to piercing the corporate veil, especially when the owners use the corporation as a mere device to further their personal rather than the corporate business, such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required. The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene.

Morris v. New York State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141-42 (1993) (citations omitted). As courts in this district have held, "it is well established that purely conclusory allegations cannot suffice to state a claim based on veil-piercing." EED Holdings v. Palmer Johnson Acquisition Corp., 387 F. Supp. 2d 265, 274 (S.D.N.Y. 2004) (citations and internal quotation marks omitted). "Accordingly, the Individual Defendants' mere knowledge and control of the company's operations is insufficient." Reynolds v. Lifewatch, 136 F. Supp. 3d 503, 526-27 (S.D.N.Y. 2015).

Here, Chanel seeks to hold Messrs. Weisser and Maione liable because WGACA's activities are under their express control and direction, and they run, own, and/or control the

business. The allegations in the amended complaint are purely conclusory, as they do not show that WGACA primarily transacted the individual defendants' business rather than its own, or that the individual defendants used WGACA as a mere device to further their personal rather than the corporate business. The amended complaint suggests only that WGACA's actions produced income for its owners and managers in the same fashion as any other business company. Thus, Chanel has failed to meet the demanding standard required to pierce the corporate veil.

WGACA's motion to dismiss all claims against the individual defendants, Messrs. Weisser and Maione, is granted. However, in the interest of justice, Chanel has leave to file an amended complaint asserting claims against the individual defendants.

## CONCLUSION

The motion to dismiss (Dkt. No. 49) is granted with respect to the New York State common law unfair competition claim, and all claims against the individual defendants, and is otherwise denied. Chanel has leave to file an amended complaint within 45 days of the date of this order.

So ordered.

Dated: New York, New York
September 14, 2018

_Louis L. Stanton_
LOUIS L. STANTON
U.S.D.J.