SHEPPARD MULLIN RICHTER & HAMPTON LLP
Theodore C. Max
tmax@sheppardmullin.com
Thomas M. Monahan
tmonahan@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701

*Attorneys for Plaintiff Chanel, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHANEL, INC.,<br><br>                              Plaintiff,<br><br>        v.<br><br>WGACA, LLC, WHAT COMES AROUND GOES AROUND LLC d/b/a WHAT GOES AROUND COMES AROUND, MHW PROPERTIES, INC., WGACA WEB, LLC, PINES VINTAGE, INC., VINTAGE DESIGNS LTD., and WCAGA LA, LLC,<br><br>                              Defendants. | Civil Action No. 18-cv-2253-LLS<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Chanel, Inc. ("Plaintiff" or "Chanel"), by its undersigned counsel, Sheppard

Mullin Richter & Hampton LLP, for its Second Amended Complaint against defendants WGACA,

LLC, What Comes Around Goes Around LLC, MHW Properties, Inc., WGACA WEB, LLC,

Pines Vintage, Inc., Vintage Designs Ltd., and WCAGA LA, LLC, one or more doing business as

What Goes Around Comes Around (collectively, "Defendant," "What Goes Around Comes

Around" or "WGACA"), alleges as follows:

SUBSTANCE OF THE ACTION

1.      Chanel is an iconic fashion company whose luxury products are advertised and sought worldwide.  Celebrities, stylists, and influencers covet Chanel designs and accessories. Chanel designs are prominently featured in print, television and social media.  Authentic CHANEL products -- new or vintage -- command top-dollar prices because of their extraordinary design and quality and the limited number of each design that are manufactured.

2.      This action arises out of What Goes Around Comes Around's improper business practices.  WGACA represents itself as "the leading global purveyor of authentic luxury vintage accessories and apparel"  and exhorts to online consumers "Buy WGACA CHANEL – 100% Authenticity Guaranteed."  Defendant WGACA advertises and purports to sell secondhand luxury products, including purportedly CHANEL-branded products, that it obtains from third parties.  Defendant WGACA also purports to sell genuine CHANEL-branded point-of-sale items including, tissue box covers, trays, and mirrors, which are not authorized for sale to the public by Chanel.  Through its business advertising and practices, Defendant WGACA has attempted to deceive consumers into falsely believing that Defendant WGACA has some kind of approval of or relationship or affiliation with Chanel or that Chanel has authenticated WGACA's goods in order to trade off of Chanel's brand and good will.

3.      There is no approval by or any relationship or affiliation between Chanel and Defendant WGACA.  Chanel has explicitly refused WGACA's requests to enter into such an arrangement.  The reason Defendant WGACA would attempt to deceive or mislead consumers in this fashion is obvious -- WGACA understands that the value of its inventory and attraction for consumers increases significantly if consumers believe that Chanel has a business relationship with WGACA and approves and/or confirms the authenticity of the products WGACA sells.

4.      Defendant WGACA, which is <u>not</u> an authorized distributor or retailer of CHANEL products, has gone out of its way to create an association with Chanel.  This includes Defendant WGACA's extensive use throughout its marketing materials of the CHANEL brand, images of CHANEL-brand products, including displaying products it does not appear to sell in stores and online, using Chanel advertisements and trademarks in social media, referring to secondhand CHANEL products as "our #WGACACHANEL" or "our vintage #WGACACHANEL" products, fostering misleading statements regarding the relationship between WGACA and Chanel, and by purportedly guaranteeing authenticity by posting on its website that "[a]ny piece purchased at What Goes Around Comes Around or one of our retail partners has been carefully selected, inspected and is guaranteed authentic."

5.      Customers considering purchasing purportedly CHANEL-branded items from WGACA are, in fact, relying solely on WGACA -- not Chanel -- to guarantee "100% authenticity."

6.      In addition to this ongoing misconduct, Chanel recently learned that Defendant WGACA has sold counterfeit CHANEL-branded point-of-sale items, including a counterfeit handbag and fake CHANEL-branded tissue box cover, which were never authorized for sale by Chanel.

7.      Chanel is seeking to prevent Defendant WGACA from continuing to mislead consumers into believing that WGACA has an affiliation or association with Chanel and/or that Chanel has approved of or authenticated the second-hand and counterfeit items being sold by WGACA.  Chanel takes this action in order to protect its brand, its goodwill and hard-earned reputation.

8.      Based on Defendant's misleading and infringing conduct, Chanel asserts claims

for counterfeiting and trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C.

§ 1114(1), false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C.

§ 1125(a)(1)(B); unfair competition and false endorsement and association under Section

43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); unfair competition under Section

349 of the New York General Business Law; false advertising under Section 350 of the New

York General Business Law; and unfair competition under the common law of New York.

Chanel seeks injunctive relief, an accounting of Defendant's sales and profits flowing from its

false advertising, false endorsement, and false association with Chanel and its goods, Chanel's

damages, attorneys' fees, and such other relief as the Court deems just and proper.

<u>PARTIES</u>

9.      Plaintiff Chanel, Inc. is a corporation organized and existing under the laws of the

State of New York with a principal place of business at 9 West 57th Street, New York, New

York 10019.

10.     Upon information and belief, Defendant WGACA, LLC, is a limited liability

company organized and existing under the laws of the State of Delaware with a principal place of

business at 13-17 Laight Street, Fifth Floor, New York, NY 10013.

11.     Upon information and belief, Defendant What Comes Around Goes Around LLC

d/b/a What Goes Around Comes Around ("WCAGA LLC"), is a limited liability company

organized and existing under the laws of the State of New York with a principal place of

business at 13-17 Laight Street, Fifth Floor, New York, NY 10013.

12.     Upon information and belief, MHW Properties, Inc. d/b/a What Goes Around

Comes Around ("MHW"), is a corporation organized and existing under the laws of the State of

Florida with a principal place of business at 20155 NE 38 Court, Suite 201, Aventura, Florida 33180 and/or 20155 NE 38th Ct., Suite 201, Miami, Florida 33180.

13.    Upon information and belief, WGACA WEB, LLC ("WGACA Web"), is a limited liability company organized and existing under the laws of the State of Florida with a principal place of business at 155 Van Wagenen Avenue, Suite 4, Jersey City, New Jersey 07306.

14.    Upon information and belief, Pines Vintage, Inc. d/b/a What Goes Around Comes Around ("PVI"), is a corporation organized and existing under the laws of the State of Florida with a principal place of business at 13-17 Laight Street, Fifth Floor, New York, NY 10013.

15.    Upon information and belief, Vintage Designs Ltd. d/b/a What Goes Around Comes Around ("VDL"), is a business corporation organized and existing under the laws of the State of New York with a principal place of business at 13-17 Laight Street, Fifth Floor, New York, NY 10013.

16.    Upon information and belief, WCAGA LA, LLC d/b/a What Goes Around Comes Around ("WCAGA LA"), is a limited liability company organized and existing under the laws of the State of New York with a principal place of business at 13-17 Laight Street, Fifth Floor, New York, NY 10013.

17.    Upon information and belief, WGACA, LLC, WCAGA LLC, MHW, WGACA Web, PVI, VDL and WCAGA LA (collectively, the "Companies") trade under the name What Goes Around Comes Around.  Together they own and do business under the name What Goes Around Comes Around; operate retail stores that purport to sell CHANEL-branded items, including in various locations throughout New York City, California, and Florida; operate a fully-functioning website at *whatgoesaroundnyc.com* through which consumers can purchase

used luxury goods, including purportedly genuine CHANEL-branded items; operate and post content on social media accounts to promote and advertise WGACA's retail business and secondhand products, including Facebook, Twitter, Tumblr and Instagram; and operate a wholesale distribution business through which they sell purportedly CHANEL-branded items to retailers around the country.  All of these activities are under the express control and direction of Weisser and Maione, who together co-founded the business.

<u>JURISDICTION AND VENUE</u>

18.     This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. §§ 1367(a).

19.     Venue is proper in this district pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and (c), because Defendant WGACA is subject to personal jurisdiction in this district due to its residing in the jurisdiction, voluntary transacting of business herein, operating stores in this district, advertising in this district, offering products to consumers in this district, shipping and selling products, including alleged CHANEL leather products, in and to this district, and operating a fully interactive website that allows consumers from this district to purchase alleged CHANEL leather products and other products, and because a substantial portion of the events at issue have arisen and will arise in this judicial district and, as a result, Chanel is suffering harm in this judicial district.

20.     This Court has personal jurisdiction over Defendants WGACA, LLC, WCAGA LLC, PVI, VDL, and WCAGA LA (collectively the "New York Parties") under Section 503 of the New York Civil Practice Laws and Rules because those Defendants reside in this district.

21.     With respect to MHW, which does not reside in this district, this Court has personal jurisdiction over it and all of the other named parties under Sections 301 and/or 302 of the New York Civil Practice Laws and Rules because they continuously and systematically conduct, transact, and solicit business in this district, because they ship and/or sell alleged CHANEL-branded products in and to this district, they operate a fully interactive website that allows consumers from this district to purchase alleged CHANEL-branded products, they use and utilize real property within the state, including the WGACA store located at 351 West Broadway, New York, New York 10013, which sells alleged CHANEL-branded products, the events giving rise to this Complaint occurred in this state and/or caused effects in this state, and Chanel, whose headquarters are in this district, will suffer harm in this district.

FACTS COMMON TO ALL CLAIMS FOR RELIEF

I.     Chanel's Business

22.     Chanel is a premier seller of a wide variety of luxury consumer products including bags, shoes, clothing, jewelry, sunglasses and accessories and is an undisputed leader in the field of fashion and beauty.

23.     The CHANEL brand and trademarks have been in use for more than eight decades in United States commerce in connection with Chanel's fashion and beauty products and has enjoyed remarkable success and renown.

24.     Chanel is the owner of all rights in and to the following registrations for the CHANEL and CC Monogram trademarks in connection with handbags and accessories,

including, but not limited to, the following registrations: (collectively the "CHANEL

Trademarks").  Printouts from the U.S. Patent and Trademark Office database reflecting the

CHANEL Trademarks are attached hereto as **Exhibit A**.

| Trademark | Reg. No. | Registration Date | Goods |
|---|---|---|---|
| CHANEL | 626,035 | May 1, 1956 | Women's handbags |
| CHANEL | 902,190 | November 10, 1970 | Bracelets, pins and earrings |
| CC Monogram | 1,314,511 | January 15, 1985 | Leather goods namely, handbags |
| CHANEL | 1,347,677 | July 9, 1985 | Leather goods namely, handbags |
| CC Monogram | 1,501,898 | August 30, 1988 | Costume jewelry |
| CHANEL | 1,733,051 | November 17, 1992 | Leather goods namely, handbags, wallets, travel bags, luggage, business and credit card cases, change purses, tote bags, cosmetic bags sold empty, and garment bags for travel |
| CC Monogram | 1,734,822 | November 24, 1992 | Leather goods namely, handbags, wallets, travel bags, luggage, business card cases, change purses, tote bags, and cosmetic bags sold empty |
| CC and Design | 3,025,934 | Dec. 13, 2005 | Handbags |

25.    All of the CHANEL Trademarks are valid, subsisting, and in full force and effect.

Moreover, those CHANEL Trademarks listed above are incontestable pursuant to § 15 of the

Lanham Act, 15 U.S.C. § 1065, and serve as conclusive evidence of Chanel's ownership of the trademarks and of its exclusive right to use the trademarks in commerce on or in connection with all of the goods identified in the registrations.  See 15 U.S.C. § 1115(b).

26.     As the result of Chanel's exclusive and extensive use of the CHANEL Trademarks, the CHANEL Trademarks have acquired enormous value and have become extremely well known to the consuming public and to the trade as identifying and distinguishing Chanel exclusively and uniquely as the source of products available under the CHANEL Trademarks.  Due to the worldwide public acceptance, overwhelming fame, and great recognition of products bearing or sold under the CHANEL Trademarks, the trademarks have come to represent an enormous amount of goodwill for Chanel and have caused merchandise bearing the CHANEL Trademarks -- even unauthorized goods -- to be in great demand.

27.     The CHANEL Trademarks are famous and have developed secondary meaning and significance in the minds of the purchasing public, and the products utilizing and/or bearing such marks and names are immediately identified by the purchasing public with Chanel.

28.     The CHANEL Trademarks are vital to Chanel, and Chanel will suffer irreparable harm if any third parties, including Defendant, are allowed to continue selling infringing, counterfeit and/or knock-off goods utilizing and/or bearing identical or substantially similar trademarks to the CHANEL Trademarks.

29.     Chanel has advertised and promoted its products in critically-acclaimed advertising campaigns featuring top fashion models and celebrities wearing CHANEL apparel and accessories.  Chanel has devoted hundreds of millions of dollars promoting CHANEL designs and products in such advertising campaigns.  Chanel's products have been featured in fashion editorials in major fashion magazines such as Vogue, Elle, Harper's Bazaar, W, Marie

<u>Claire</u>, as well as newspapers and magazines such as <u>The New York Times</u>, <u>The Financial Times</u>, <u>Time</u>, <u>WWD</u> and <u>Town and Country</u>.

30.     Chanel operates social media accounts to promote and advertise its designs and products, including Facebook, Twitter, Tumblr and Instagram.  Chanel's Instagram site, @chanelofficial, has 24.1 million followers and features CHANEL designs, advertising and references to Chanel's iconic designer, Gabrielle "Coco" Chanel, including, for example, her famous quotes, such as "Chanel is above all style.  Fashion passes, style remains."

31.     Chanel's products are instantly recognized by the use of the famous and well-known CHANEL Trademarks, which are federally-registered and have been used exclusively by Chanel for decades in connection with CHANEL product lines.

32.     Hundreds of millions of dollars' worth of consumer goods are sold each year under the CHANEL Trademarks.  To maintain the prestige of the CHANEL brand and CHANEL Trademarks and to ensure that consumers receive the type of attention commensurate with Chanel's reputation for luxury and quality leather products, Chanel authorizes its leather products to be sold only through its own retail stores and high-end, prestigious specialty stores, such as Neiman Marcus, Barney's, Nordstrom and Saks Fifth Avenue.  Chanel's fragrance, cosmetics and sunglasses are only sold online at www.chanel.com and a limited number of prestigious retailers' websites.

33.     Yearly sales of Chanel's products in the United States total in the hundreds of millions of dollars.  All of Chanel's products are known and lauded for their high quality and style in all forms of media.  Indeed, Chanel consistently appears year after year in the *Women's Wear Daily* list of the 100 best known brands in the fashion industry.

34.    The recognition of the CHANEL brand and CHANEL Trademarks among the public at large is enhanced not only by Chanel's own extensive advertising efforts and limited and select distribution but also by fashion editorial and press coverage of Chanel, as well as the coverage of Chanel in social media by influencers, celebrities and fashion aficionados.  Such press coverage reaches hundreds of millions of consumers.

35.    The CHANEL brand and CHANEL Trademarks have become famous and extraordinarily well known across all social and demographic groups and are in demand by consumers of all ages and from all demographics.

36.    The only way for consumers to ensure that they are in fact receiving genuine CHANEL products is to purchase such goods from Chanel or from an authorized retailer of Chanel.  Chanel does not sell secondhand or vintage Chanel goods.  Chanel does not sell to or authorize sales and distribution through Defendant WGACA and does not authenticate WGACA's inventory.  Defendant WGACA has not obtained the CHANEL products that it offers for sale directly from Chanel.

II.    Defendant WGACA's Unlawful Conduct

37.    Upon information and belief, WGACA is a retailer specializing in secondhand bags, jewelry and accessories that has built its business by piggybacking on the reputation of a handful of select luxury brands -- including Chanel.

38.    For example, WGACA has held trunk shows at retail locations featuring Chanel products and held itself out as an expert on distinguishing genuine Chanel designs from fakes. For example, an article promoting a WGACA trunk show and What Goes Around Comes Around generally stated:

> This weekend we have the very exciting pleasure of housing a fabulous trunk
> show for What Goes Around Comes Around vintage and a special featured

designer:  the one and only Chanel!  With so many different styles of great bags and one-of-a-kind jewelry, the staff is having a difficult time handing over their paychecks!  We sat down with WGACAs representative, Viola Drukh and asked for her expertise on how to tell what's real from fake.

**See Exhibit B**.  In the article, Chanel's black and white authenticity cards are compared to and associated with WGACA's black authenticity cards.  Upon information and belief, WGACA's so-called expert had no Chanel training or experience authenticating genuine Chanel designs.

39.     Defendant WGACA is offering scores of alleged secondhand CHANEL products on its website at *www.whatgoesaroundnyc.com* (the "WGACA Website"), making Chanel one of the most  featured brands offered by WGACA.  Defendant WGACA also offers scores of alleged secondhand CHANEL products through other retailers in brick and mortar stores and online and holds itself out as an expert on the authenticity and genuineness of Chanel designs.  The mere volume of CHANEL-branded products offered for sale on the WGACA Website suggests to consumers that WGACA has a relationship with Chanel that enabled WGACA to accumulate such a significant inventory.  In addition, WGACA offers for sale secondhand point-of-sale CHANEL-branded items suggesting to consumers that WGACA has a relationship with Chanel. However, there is no such relationship.

40.     Upon information and belief, Defendant WGACA obtains the CHANEL-branded products it offers for sale not from Chanel or any authorized Chanel retailer or distributor but rather from unknown third parties, which may include counterfeiters, consumers and other secondhand resale businesses.

41.     Upon information and belief, to verify and guarantee the authenticity of the CHANEL products it sells, Defendant WGACA relies solely on its own purported expertise or that of undisclosed third parties.  Chanel has not authorized or approved WGACA's authentication or approval of secondhand CHANEL products as genuine.  Chanel is not involved

-12-

in authenticating or approving any products sold by WGACA and does not offer to WGACA's consumers a guarantee that the products purchased from WGACA are authentic or approved by Chanel.

A.   <u>Defendant WGACA's Welcome Email Misleads New Potential WGACA Customers</u>

42.   Defendant WGACA's welcome email to consumers states:  "Welcome to What Goes Around Comes Around the most trusted purveyors of fine luxury vintage. . . ." and features a female model wearing a CHANEL belt and CHANEL bag.  *See* **Exhibit C**.

B.   <u>The WGACA Website and Its Misleading Exploitation of the CHANEL Brand and Famous Trademarks</u>

43.   On the WGACA Website, WGACA promotes itself as "The Finest Luxury Vintage" and "the leading purveyor of authentic luxury vintage since 1993," and has stated that "WGACA has internationally acclaimed collections of luxury houses such as Chanel. . . ."  "The WGACA website further states: "Our experienced buying team travels internationally, hand-selecting the rarest and most desirable pieces." (https://www.whatgoesaroundnyc.com/about), attached as **<u>Exhibit D</u>**.

44.   Although the WGACA Website purports to offer products from seven luxury brands in addition to Chanel, including Bottega Venata, Celine, Christian Dior, Fendi, Gucci, Hermes and Louis Vuitton, a search of the site reveals that the greatest number of items sold or offered for sale are often CHANEL-branded products.

45.   At no time are visitors to the WGACA Website explicitly advised that Defendant WGACA is not affiliated with or sponsored by Chanel or that the products offered for sale have not been authenticated by Chanel.  Instead, WGACA has adopted a business model designed to suggest that there is an affiliation or relationship with Chanel by making repeated and unnecessary use of Chanel's famous trademarks, by including in the visual look and feel of the

website CHANEL-branded designs that are not offered for sale by WGACA and by posting images and content exclusively associated with Chanel.

46.     WGACA home (landing) page features a sale of CHANEL-branded handbags, accessories, apparel and jewelry displaying Chanel's famous CC Monogram trademark and Chanel's iconic handbags, as shown in **Exhibit E** (https://www.whatgoesaroundnyc.com/ ).

47.     "Chanel" is listed first in the non-alphabetical list of brands, under the heading "Shop by Brand," as shown in **Exhibit F** (https://www.whatgoesaroundnyc.com/brand.html ).

48.     On the WGACA Website and with WGACA's retail partners, WGACA uses the description "vintage" to refer to the second hand CHANEL-branded products it offers for sale. The WGACA website holds itself out as "The Finest Luxury Vintage."

49.     Upon information and belief, WGACA offers for sale and holds out certain Chanel-branded products to consumers as "vintage" even though such items are of recent distribution and sale.

50.     The Federal Trade Commission ("FTC")'s advisory "Shopping for Antiques" states: "A **vintage collectible** is an item that is at least 50 years old."

51.     Upon information and belief, a number of the second-hand Chanel-branded products offered for sale and sold by defendant WGACA are not "vintage collectibles" as defined by the FTC.

52.     Upon information and belief, a number of the second-hand Chanel-branded products offered for sale and sold by defendant WGACA are less than twenty years old.

53.     For instance, WGACA recently advertised and sold a "[r]are vintage Chanel smartphone case" that was allegedly "refurbished" by Chanel in 2014, and is currently marketing a "[r]are vintage Chanel barrette" that was allegedly part of Chanel's 2005 Fall/Winter

collection.  The item advertised by WGACA as a "Chanel Golden Yellow Caviar Timeless Classic Smartphone Holder," is an eyeglasses case from Chanel's Spring/Summer 1997 collection.  WGACA's description of the eyeglasses case as a "Smartphone Holder" is false and misleading.  Chanel did not offer a "Smartphone Holder" as part of its Spring/Summer 1997 collection.  A screenshot of the listing for the CHANEL-branded Golden Yellow Caviar Timeless Classic Smartphone Holder is attached as **Exhibit G**.

54.     WGACA's advertising and website references to "rare vintage items" misrepresent the nature and description of second-hand Chanel-branded products, especially where goods have not been sold to the public.  In addition, WGACA's use of Chanel-branded packaging and boxes also give consumers the impression that WGACA is an authorized retailer of genuine Chanel products, when in fact it is not.

C.     Defendant WGACA's Guarantee of Authenticity Is Impliedly False

55.     Upon information and belief, Defendant WGACA has offered for sale a CHANEL-branded hand mirror through one of its retail partners, which was never offered for sale or sold by Chanel.  The CHANEL-branded hand mirror was exclusively produced for and distributed to selected Chanel beauty retailers for counter support and client testing of CHANEL beauty products.  Defendant WGACA's offering of the CHANEL-branded hand mirror for sale to consumers through one of its retail partners as a genuine Chanel retail item, was false and misleading.  *See* **Exhibit H**.

56.     Upon information and belief, Defendant WGACA has offered for sale a CHANEL-branded black tray for sale through one of its retail partners, which was provided to Chanel beauty retailers for counter support to display Chanel beauty products.  Defendant

WGACA's representing the CHANEL-branded black counter display tray for sale to consumers as a genuine Chanel retail item was false and misleading.  *See* **Exhibit I**.

57.     Upon information and belief, Defendant WGACA has advertised for sale a CHANEL-branded notepad and pencil for sale on its website as a genuine Chanel retail item. Chanel produced the CHANEL-branded notepad and pencil to be provided at one of its fashion shows and the item was never sold or distributed to the public.  Defendant WGACA's offering of the CHANEL-branded notepad and pencil for sale on its website as a genuine Chanel product is false and misleading.  *See* **Exhibit J**.

58.     Customers who purchase a product from Defendant WGACA which is advertised and sold as being from Chanel receive a "Letter of Authenticity," as referenced on a WGACA Product Page described above (the "Letter of Authenticity").

59.     One of WGACA's Letters of Authenticity, as shown in **Exhibit K**, reads as follows:

>    This letter confirms that item Q6HCHK00KB000 Chanel Black Long Tissue Box is an authentic Chanel decoration.

The Letter of Authenticity is false and misleading as that item is not "an authentic Chanel decoration" because Chanel does not sell point-of-sale CHANEL-branded items such as the black tissue box.  Consumers who purchase such goods believing that they are "authentic Chanel decorations" are also misled as to the value of such items.

60.     The Letter of Authenticity is further misleading because it does not advise consumers that neither Defendant WGACA nor its purported experts have any affiliation with or authentication from Chanel, that WGACA does not obtain its inventory from Chanel, and that Chanel has not authenticated or opined on behalf of WGACA as to the genuineness of the product.

61.     Consumers who purchase secondhand goods through Defendant WGACA, which are purported to be authentic, view the expectation by consumers that the products they purchase are genuine and properly authenticated as a material condition of sale.  The Letter of Authenticity falsely implies that <u>Chanel</u>, not WGACA, has authenticated the item at issue or otherwise confirmed its authenticity on behalf of WGACA.

62.     Defendant WGACA's website features a separate section for its online store called "Authenticity Guaranteed" where WGACA states that:  "[a]ny piece purchase[d] at What Goes Around Comes Around or one of our retail partners has been carefully selected, inspected and is guaranteed authentic," as shown in **Exhibit L**.

63.     Despite Defendant WGACA's representation that the authenticity of CHANEL-branded handbags is 100% guaranteed, WGACA has sold at least one previously owned CHANEL-branded handbag which, in fact, was counterfeit, as referenced in **Exhibit M**.

64.     Despite Defendant WGACA's representation that the authenticity of CHANEL-branded products is 100% guaranteed, WGACA has sold through one of its retail partners at least one CHANEL-branded tissue box holder, which, in fact, was counterfeit, as referenced in **Exhibit N**.

C.      <u>Defendant WGACA's Social Media Websites Mislead Consumers</u>

65.     Defendant WGACA's social media pages, including Facebook, Instagram, Twitter, and Tumblr (the "WGACA Social Media Websites"), posted by WGACA and influencers, who upon information and belief, have a material connection and/or agreement with WGACA, make an association between WGACA and Chanel in an effort to create the impression that WGACA is a partner or affiliate of Chanel or an authorized or approved retailer or distributor of Chanel by using phrases such as "WGACAChanel handbags in-store & online!", "In honor of Coco Chanel's

134th bday enjoy 20% off Chanel bags….#WGACACHANEL" and "Our rare #Chanel No. 5

perfume bottle bag now available," as shown in **Exhibit O-S**, including the following:

- Some of WGACA's Instagram pages include photographs of models and influencers wearing or carrying CHANEL handbags that clearly display Chanel's famous CC Monogram and photographs of Chanel's iconic handbags.  WGACA refers to secondhand Chanel products as "our #WGACACHANEL" or with the designation "#WGACACHANEL".  One Instagram post on September 25, 2017 featured the advertising copy:  "This Chanel won't wear itself.  Shop our exclusive collection @ruelala.  #WGACACHANEL #repost."  *See* **Exhibit O**.

- On August 24, 2017, Coco Chanel's birthday, the "#WGACACHANEL" hashtag on Instagram featured an entry:  "'Simplicity is the keynote of all elegance.'  Celebrating @Chanelofficial & the woman who created my favorite quotes (and bags) on her birthday this week with @whatgoesaround nyc – they're offering 20% - 30% off all Chanel until tomorrow!  So major I had to share ♥ #WGACACHANEL #chanel."  *See* **Exhibit P**.

- Some of Defendant WGACA's Instagram pages feature photographs from previous Chanel advertising campaigns, including at least three advertisements, one featuring Helena Christensen and Claudia Schiffer, one featuring Claudia Schiffer in Paris, and another with Linda Evangelista and Christy Turlington photographed by Karl Lagerfeld.  *See* **Exhibit Q**.

- Defendant WGACA's Facebook page had a banner on the top of the page which featured Chanel's famous CC trademark with the words "What Goes Around Comes Around: The Finest Luxury Vintage."  The homepage of WGACA's Facebook page showed a photograph comprising of three separate photographs, the largest photo of which was a Chanel handbag featuring the famous Chanel logo.  On the page featuring certain posts of WGACA's Facebook, the first post featured a Chanel handbag with the hashtag "#WGACACHANEL."  Several other posts feature Chanel products with the hashtag "WGACACHANEL" and descriptions such as "@achiquepeek in our #WGACACHANEL suit."  On the left-hand side of the same Facebook page under the caption "Photos," several photographs are featured of Chanel's iconic handbags.  A number of the Facebook entries contain the same images and messages as featured on Instagram.  *See* **Exhibit R**.

- On September 27, 2017, Defendant WGACA's Twitter page's top banner featured a photograph of a person holding a CHANEL handbag with the interlocking CC Monogram Trademark.  To the left side of the CHANEL handbag featured on this page are the words "WHAT GOES AROUND COMES AROUND" enclosed in a circle.  The Twitter page also featured several of Chanel's iconic handbags.  A number of the Twitter entries contain the same images and messages as Instagram.  *See* **Exhibit S**.

- WGACA's Tumblr page displays several photographs of luxury brand goods, such as Chanel and Hermés; however, all of the handbags featured on this page and the single perfume bottle featured on the same page are all CHANEL-branded goods.

- WGACA's Pinterest landing page contains various sections called "boards" and the board titled "WGACA's Online Shop," features three photographs of luxury brand handbags, including a photograph of Chanel's iconic handbags, wallets and accessories, on the top and as the most prominent of the three images.

66.   The WGACA Social Media Websites nowhere inform customers that Defendant WGACA has no affiliation with or authorization by Chanel and that WGACA does not obtain its secondhand inventory from Chanel.  In addition, the WGACA Social Media Websites do not disclose the material connection between influencers and WGACA.

D.   Defendant WGACA's Retail Stores Engage in Unauthorized Use of the CHANEL Trademarks

67.   WGACA's brick and mortar stores in New York make excessive, unauthorized use of CHANEL Trademarks by prominently featuring the famous CHANEL Trademarks and brand as follows:

- Defendant WGACA's East Hampton store entrance is decorated with a promotional advertisement which is a facsimile of a giant CHANEL No. 5 perfume bottle, as shown in **Exhibit T**, even though no CHANEL fragrances are offered for sale or sold by WGACA in any of its retail locations or online.  The sales associate at WGACA's East Hampton store also stated that they "have more Chanel [items] than Chanel."

- Defendant WGACA's Soho store has a sign in front of the store which advertises several brands but "Vintage Chanel" is featured prominently at the top with letters which appear larger than other brands and the window display features all CHANEL-branded items, as shown in **Exhibit U**.

- Defendant WGACA's Roslyn location uses CHANEL-branded advertisements, including some of the advertisements featured in WGACA's social media accounts, as shown in **Exhibit V**.

E.   The Total Effect of WGACA's Misleading Conduct

68.   The prominent and pervasive use and display of the CHANEL brand, CHANEL Trademarks, CHANEL-branded products, Chanel-related quotations by WGACA and the use of

the hashtag "#WGACACHANEL" suggests that WGACA has an affiliation, authorization or relationship with Chanel, when it has not and does not.

69.     In advertising and offering CHANEL products through the WGACA Website and retail locations and promoting Defendant WGACA in social media, Defendant has co-joined its WGACA trademark with the famous CHANEL Trademarks and represented, and currently is representing, that it sells "authentic" CHANEL products, their "quality standards are unrivaled and only matched to [their] dedication to authenticity," and the authenticity is guaranteed, suggesting that Chanel has authenticated WGACA's inventory, stands behind WGACA's product and supports WGACA's conduct, when it has not and does not.

70.     The Letter of Authenticity included with WGACA's products contains impliedly false and misleading statements indicating that Chanel has authenticated the purchased product, when it has not and does not.

71.     Defendant WGACA intentionally displays hashtags and copy such as "our #WGACACHANEL" or "our vintage #WGACA" or "our #Chanel bag" and CHANEL hashtags and advertising and promotional materials by WGACA and influencers to falsely convey to consumers WGACA is linked and associated with Chanel and its sale of secondhand CHANEL products and that WGACA is an authorized and approved retailer of CHANEL products, when it is not.

72.     Defendant WGACA neglects to disclose the material connection and/or agreement between WGACA and influencers posting on its social media sites, including "#WGACACHANEL".

73.     By engaging in the activities described above and other similar activities (together the "Misleading Conduct"), Defendant WGACA is misleading and intends to mislead consumers

into believing that: (a) Defendant WGACA is an authorized partner or distributor of Chanel; (b) Chanel has authorized or approved of Defendant WGACA's conduct and/or the authenticity of its inventory; and/or (c) by doing business with Defendant WGACA, consumers are sure to receive an authentic CHANEL-branded product, which is guaranteed authentic by Chanel.

74.    The purportedly guaranteed authenticity of Defendant WGACA's products is a material factor for consumers and affects purchasing decisions.  The belief that Chanel stands behind Defendant WGACA's CHANEL-branded products is a material factor for consumers.

75.    Upon information and belief, Defendant WGACA is fully aware that the Misleading Conduct deceives consumers regarding WGACA's relationship with Chanel. Nevertheless, Defendant continues to engage in such improper and unlawful business practices in order to attract consumers to Defendant WGACA's website and stores and to induce consumers into buying products from Defendant WGACA.

76.    Upon information and belief, Defendant WGACA has caused its false and deceptive advertising to be distributed and the goods to be sold in interstate commerce and into this district.

77.    Defendant WGACA's conduct has caused and, unless enjoined by this Court, will continue to cause irreparable injury to Chanel.  Chanel has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF:**
**<u>TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))</u>**

78.    Chanel repeats and realleges paragraphs 1 through 77 above, as if fully set forth herein.

79.    Defendant WGACA's infringing activities are likely to cause confusion, or to cause mistake or to deceive Defendant WGACA's customers, potential consumers, and/or the public as to the source or sponsorship of Defendant WGACA's goods and services.  Consumers

are likely to be misled into believing that Defendant's website and sale of CHANEL's goods are licensed, sponsored, or otherwise approved by Chanel.  Such confusion is inevitable here where Defendant is using the CHANEL Trademarks and referencing Defendant WGACA's products as "our" CHANEL handbags or "our exclusive collection."

80.     Upon information and belief, Defendants were on both actual and constructive notice of Chanel's exclusive rights in the registered CHANEL Marks when they adopted these same marks for use to advertise on its website and in its retail stores infringing and counterfeit products that exactly copy those sold by Chanel under the CHANEL Trademarks.  Defendants' actions are designed to trade on Chanel's CHANEL Trademarks.  Defendant's use of the CHANEL Trademarks is willful, in bad faith, and with full knowledge of Chanel's prior use of, exclusive rights in, and ownership of the CHANEL Trademarks, with full knowledge of the goodwill and reputation associated with the CHANEL Trademarks, and with full knowledge that Defendant has no right, license, or authority to use the CHANEL Trademarks or any other mark confusingly similar thereto.

81.     Upon information and belief, Defendant WGACA has offered for sale and sold infringing CHANEL-branded goods, including a counterfeit handbag and a counterfeit point-of-sale tissue box holder, has represented such goods to the public as genuine and authentic CHANEL products, including a counterfeit CHANEL point-of-sale item, which have never been offered for sale or sold by Chanel to the public.

82.     Defendant WGACA's has violated Chanel's exclusive rights to the CHANEL brand and its trademarks and contribution to the violation of such rights by others, by using and suggesting and encouraging the use of the designation "#WGACACHANEL" and contributed to the violation of such rights by others, by using and suggesting and encouraging the use by its

influencers and consumers of the CHANEL brand and CHANEL Trademarks as a designation to advertise and sell WGACA secondhand goods through the WGACA Social Media Websites.

83.     Defendant WGACA's use of the famous and well-known CHANEL Trademarks co-joined with the WGACA mark as the designation "#WGACACHANEL" and in social media constitutes a use in commerce in connection with the sale, offering for sale, advertising, and distribution of goods and services, though it be for secondhand and, upon information and belief, infringing and counterfeit goods.

84.     The purported secondhand CHANEL goods and CHANEL point-of-sale items offered for sale and sold by Defendant WGACA are identical in type to the fashion designs and accessories sold by Chanel and the social media images include advertising campaigns and hashtags that are part of Chanel's social media and advertising campaigns.

85.     Upon information and belief, Defendant WGACA's use of the designation "#WGACACHANEL" causes consumers actively seeking to find and view CHANEL-branded social media and designs to click on the hashtag designation "#WGACACHANEL," either by mistake or confusion or because they are deceived into believing that the designation "#WGACACHANEL" is authorized, sponsored or approved by Chanel.

86.     Upon information and belief, there is an expectation among social media users who utilize social media websites such as Instagram, Facebook, Twitter and Tumblr that hashtags which feature the CHANEL Trademarks are authorized and approved by Chanel, when in fact they are not.  Defendant WGACA's use of the CHANEL brand and trademarks in the hashtag in the designation "#WGACACHANEL" is willful, in bad faith, and with full knowledge of Chanel's prior use of, exclusive rights in, and ownership of the CHANEL Trademarks, with full knowledge of the goodwill and reputation associated with the CHANEL

Trademarks, and with full knowledge that Defendant has no right, license, or authority to use the CHANEL Trademarks or any other mark confusingly similar thereto.

87.      Defendant's acts are intended to reap the benefit of the goodwill that Chanel has created in its CHANEL Trademarks and constitute infringement of Chanel's federally-registered trademarks in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

88.      Defendant's conduct has caused and is causing immediate and irreparable injury to Chanel and will continue to both damage Chanel and deceive the public unless enjoined by this Court.  Chanel has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a)**

89.      Chanel repeats and realleges the allegations set forth in Paragraphs 1 through 88 above, as if fully set forth herein.

90.      On July 2, 2015, Defendant WGACA acknowledged in an email to WGACA's legal counsel that Chanel's association with WGACA would be a benefit to WGACA and that consumers would see this as a "value added" benefit if Chanel were involved in ensuring the authenticity of CHANEL-branded items purchased for WGACA.

91.      In representing to consumers through its Letter of Authenticity, advertising, and on its website that so-called CHANEL-branded products are "authentic Chanel" and CHANEL-branded goods, respectively, are "inspected and is guaranteed authentic," Defendant WGACA is falsely and/or misleadingly passing off its products as products inspected or guaranteed by Chanel.  By so doing, Defendant WGACA is misrepresenting the nature, characteristics and/or qualities of certain of its goods and services and other commercial activities.

92.      Upon information and belief, in representing to consumers on its website and advertising that its employees are trained to be able to "inspect[] and guarantee[] authentic"

CHANEL-branded goods and differentiated between infringing and counterfeit CHANEL-branded products, when, in fact, they are not trained by Chanel, Defendant WGACA is falsely and/or misleadingly consumers as to WGACA's ability to authenticate secondhand CHANEL products.

93.     Upon information and belief, in representing to consumers on its website and advertising that certain CHANEL-branded goods are "vintage," when, in fact, they are not, Defendant WGACA is falsely and/or misleadingly consumers as to the purportedly "vintage" nature of the secondhand CHANEL products offered for sale by WGACA.

94.     Upon information and belief, Defendant WGACA made these false and misleading representations in order to take advantage of Chanel's renown and reputation so as to induce consumers to purchase Defendant WGACA's products under the false impression that they were verified by Chanel to be authentic and/or were, in fact vintage items.

95.     Chanel has an interest in stopping Defendant WGACA from deceiving consumers into believing that Defendant WGACA offers products that are either authentic and/or verified by Chanel to be authentic, or that are purportedly vintage products.

96.     Defendant's implicitly false statements of the authenticity and vintage nature of its goods and services have caused and are likely to cause consumers to mistakenly believe that Chanel verified their authenticity or vintage status when, in fact, Chanel did not verify their authenticity or vintage status and did not authorize or train WGACA to do so.

97.     Defendant WGACA's false and misleading advertisements and CHANEL-branded products have actually deceived or are likely to deceive a substantial portion of the intended audience and harm Chanel's reputation.

98.     The false and misleading misstatements made by Defendant WGACA as to whether Chanel has verified the product authenticity or vintage status are material and are likely to influence purchasing decisions, including decisions to purchase from Defendant WGACA. Indeed, Defendant WGACA premises its entire business on its claimed ability to provide authentic CHANEL-branded products to consumers and attract consumers by its misleading claim of authenticity and/or vintage status.

99.     Defendant WGACA's conduct is willful.

100.     Defendant WGACA's conduct described herein is causing immediate and irreparable injury to Chanel, by selling counterfeit goods, directly diverting sales, and by harming Chanel's goodwill and reputation, and will continue to damage Chanel and deceive consumers unless enjoined by this Court.

101.     Defendant WGACA's acts constitute false advertising and false representations in violation of 15 U.S.C. § 1125(a).  Chanel has no adequate remedy at law.

102.     Upon information and belief, Defendant WGACA received substantial revenues and substantial profits arising out of its acts of passing off and false advertising to which it is not entitled, and Chanel also suffered damages as a result of Defendant WGACA's acts of false advertising, for which Defendant WGACA is responsible.

### THIRD CLAIM FOR RELIEF
### FALSE ASSOCIATION AND ENDORSEMENT/UNFAIR COMPETITION
### IN VIOLATION OF 15 U.S.C. § 1125(a)

103.     Chanel repeats and realleges the allegations set forth in Paragraphs 1 through 102 above as if fully set forth herein.

104.     In repeatedly, prominently and pervasively exploiting the CHANEL name, the CHANEL Trademarks, imagery of CHANEL-branded products, and other indicia of Chanel and the CHANEL brand throughout its marketing and promotional materials (including the WGACA

Website, the WGACA Welcome Email, the Letter of Authenticity, the Authenticity Guaranteed section of WGACA's online store, and the WGACA Social Media Websites), including featuring Chanel and its products more prominently than any other brand and by assuring consumers of the authenticity of its inventory as determined by WGACA -- all without authorization from Chanel to do so, and failing to inform customers that Defendant WGACA has no affiliation with Chanel, Defendant WGACA is engaged in a pattern of conduct and a business practice designed to cause confusion and mistake, and to deceive consumers by conveying the erroneous impression that WGACA and its goods and services are associated, affiliated or connected with Chanel, and that its goods and services are authentic and approved by Chanel even though Chanel has no affiliation with WGACA or its inventory.

105.    Defendant WGACA's conduct is willful and causing immediate and irreparable injury to Chanel, both by direct diversion of sales and by harming Chanel's goodwill and reputation, and will continue to damage Chanel and deceive consumers unless enjoined by this Court.

106.    Defendant WGACA's actions in the manner alleged above constitute a false designation of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which have caused, and are likely to cause, confusion, mistake and deception, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Chanel has no adequate remedy at law.

107.    Upon information and belief, Defendant WGACA received substantial revenues and substantial profits arising out of its acts of false advertising to which it is not entitled, and Chanel also suffered damages as a result of Defendant WGACA's acts of false advertising, for which Defendant WGACA is responsible.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF THE NEW YORK DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**
**IN VIOLATION OF N.Y. GEN. BUS. LAW § 349**

108.   Chanel repeats and realleges the allegations set forth in Paragraphs 1 through 107 above, as if fully set forth herein.

109.   By reason of the acts set forth above, Defendant WGACA has been and is engaged in deceptive acts or practices in the conduct of a business, trade or commerce, in violation of Section 349 of the New York General Business Law.

110.   Defendant WGACA's conduct is willful and in knowing disregard of Chanel's rights.

111.   Defendant WGACA has been and is engaged in deceptive acts or practices in the conduct of a business, trade or commerce in violation of Section 349 of the New York General Business Law.  Chanel has no adequate remedy at law.

112.   Defendant WGACA's conduct has caused and is causing immediate and irreparable injury to Chanel and will continue to both damage Chanel and deceive the public unless enjoined by this Court.

**FIFTH CLAIM FOR RELIEF**
**FALSE ADVERTISING IN VIOLATION OF N.Y. GEN. BUS. LAW § 350**

113.   Chanel repeats and realleges the allegations set forth in Paragraphs 1 through 112 above, as if fully set forth herein.

114.   By reason of the acts set forth above, Defendant WGACA has been and is engaged in consumer-oriented advertising and marketing in the conduct of its business, trade and/or commerce that is false and misleading in material respects, in violation of Section 350 of the New York General Business Law.

115.    Upon information and belief, Defendant WGACA engaged in false advertising in order to induce consumers to purchase used products from Defendant WGACA.  Chanel has no adequate remedy at law.

116.    Defendant WGACA's conduct described herein is causing immediate and irreparable injury to Chanel, both by direct diversion of sales and by harming the CHANEL Trademarks and Chanel's goodwill and reputation, and will continue to damage Chanel and deceive and harm the public unless enjoined by this Court.

WHEREFORE, Plaintiff Chanel, Inc. respectfully demands judgment as follows:

1)    That a permanent injunction be issued enjoining Defendants What Comes Around Goes Around LLC, MHW Properties, Inc., Pines Vintage, Inc., Vintage Designs Ltd., and WCAGA LA, LLC, any entity owned and/or controlled in whole or in part by Defendants WGACA, and the partners, officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors, and assigns of the foregoing and all others in active concert or participation with any of them from:

(a)    using any of the CHANEL Marks, or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of the CHANEL Marks in or as part of a design, logo, hashtag, domain name, or trademark; using any such mark in connection with the exportation, promotion, advertisement, sale, offering for sale, manufacture, production, or distribution of any business, product or service; and from using any such mark on or as a feature of any product, including the use of the designation "#WGACACHANEL";

(b)     processing, packaging, and transporting any product bearing any of the
CHANEL Marks or any mark that is a simulation, reproduction, copy,
colorable imitation or confusingly similar variation of any of the
CHANEL Marks;

(c)     selling, offering, distributing, disseminating, or otherwise providing any
product that bears any of the CHANEL Marks, or any mark that is a
simulation, reproduction, copy, colorable imitation, or confusingly similar
variation of any of the CHANEL Marks; marketing, promoting or
advertising any goods and services in a manner that causes consumers to
believe that Defendant WGACA is affiliated with Chanel in any way or
that Defendant WGACA's goods have been authenticated by Chanel or
individuals affiliated with Chanel;

(d)     disseminating any false and/or misleading information relating to the
authenticity, nature or age of Defendant WGACA's goods and services
with respect to Chanel;

(e)     disseminating any false and/or misleading information about Chanel
and/or Chanel products;

(f)     engaging in any activity constituting counterfeiting of CHANEL
Trademarks under 15 U.S.C. § 1114(1)(a);

(g)     engaging in any other activity constituting false advertising of Chanel
products;

(h)     engaging in any other activity constituting unfair competition with Chanel;
and

(i)     assisting, aiding, or abetting any other person or business entity in

engaging in or performing any of the activities referred to in

subparagraphs (a) through (f) above.

2)     That the Court issue an order directing Defendants WGACA to include a

disclaimer on all advertising, marketing and promotional materials concerning or relating to

purportedly CHANEL-branded products that Defendants WGACA are not sponsored, authorized

or affiliated with Chanel nor do its agents (e.g., "experts") have any relationship with or training

from Chanel and that such disclaimer must be prominently displayed with large and legible text

placed upon the secondhand materials, as well as in all of WGACA's advertising, marketing and

promotional materials.

3)     That the Court issue an order directing Defendants WGACA to notify potential

consumers that the purported authenticity of the products for sale by Defendant WGACA is **not**

verified or authenticated by Chanel and that Chanel does **not** guarantee items sold by Defendant

WGACA are genuine and that such notice must be prominently displayed with large and legible

text placed upon the materials, as well as in all of WGACA's advertising, marketing and

promotional materials.

4)     Directing that Defendant WGACA, at its own expense, be directed to recall any

and all counterfeit products from any consumers, distributors, retailers, vendors or others to

whom it has distributed or sold her counterfeit products.

5)     Directing such other relief as the Court may deem appropriate to prevent the

public from deriving erroneous impressions regarding Defendant WGACA, its affiliation with

Chanel and/or the authenticity of its products.

6)      Directing that Defendant WGACA file with the Court and serve upon Chanel's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which it has complied with the above.

7)      Awarding Chanel its actual damages, trebled pursuant to 15 U.S.C. § 1117(a) and (b), or, if Chanel elects, statutory damages as the Court considers just, up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c), arising out of Defendant's acts of willful trademark infringement and counterfeiting based on Defendant's use of the CHANEL Marks.

8)      Awarding Chanel its actual damages, trebled pursuant to 15 U.S.C. § 1117(a), arising out of Defendant's acts of willful unfair competition and trademark dilution.

9)      Requiring Defendant to account for and pay over to Chanel three times the profits realized by Defendant from its infringement of the CHANEL Marks and unfair competition with Chanel.

10)      Awarding Chanel such further amounts as the Court may in its discretion find to be just should the amount of profits be inadequate, pursuant to 15 U.S.C. § 1117(a).

11)      Awarding Chanel exemplary and punitive damages to deter any further deceptive and unfair conduct as the Court finds appropriate.

12)      Awarding Chanel its costs and disbursements incurred in this action, including reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

13)      Awarding Chanel its actual damages, trebled pursuant to Section 349(h) of the New York General Business Law, arising out of Defendant's acts of willfully and knowingly engaging in deceptive business practices that disregarded Chanel's rights.

14)      Awarding Chanel reasonable attorney's fees, pursuant to Section 349(h) of the New York General Business Law.

15)      Awarding Chanel its actual damages, trebled pursuant to Section 350-e(3) of the New York General Business Law, arising out of Defendant's acts of willful and knowing false advertisement using the CHANEL Marks.

16)      Awarding Chanel reasonable attorney's fees, pursuant to Section 350-e(3) of the New York General Business Law.

17)      Awarding Chanel interest, including pre-judgment interest on the foregoing sums.

18)      Awarding Chanel such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

| Dated:  October 29, 2018<br>            New York, New York | */s/ Theodore C. Max*<br>Theodore C. Max<br>tmax@sheppardmullin.com<br>Thomas M. Monahan<br>tmonahan@sheppardmullin.com<br>30 Rockefeller Plaza<br>New York, New York 10112<br>Telephone:  (212) 653-8700<br>Facsimile:  (212) 653-8701<br><br>*Attorneys for Plaintiff Chanel, Inc.* |
| --- | --- |