**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112-0015
212.653.8700 main
212.653.8701 fax
www.sheppardmullin.com

Theodore C. Max
212.653.8702 direct
tmax@sheppardmullin.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/1/2020

November 25, 2020

*[Handwritten note from Judge:]* The November 18 order is clear. It has nothing to do with burden of proof. The officer's certification must follow the strict requirement of the August 21 order, or it will not be acceptable. What is needed is not clarification, but compliance.

Louis L. Stanton
Nov. 30, 2020

**By ECF**
The Honorable Louis L. Stanton
United States Senior District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:  **Chanel, Inc. v. WGACA, LLC, et al., 18-cv-02253 (LLS)**

Dear Judge Stanton:

We represent plaintiff Chanel, Inc. ("Chanel") and write seeking clarification of the Order issued by the Court on November 18, 2020 (Dkt. No. 160 (the "November 18 Order")) concerning Chanel's November 4, 2020 Certification (Dkt. No. 153 (the "Certification")) made pursuant to the Court's August 21, 2020 Order (Dkt. No. 146 (the "August 21 Order")).

Chanel respectfully submits that the Court's November 18 Order impermissibly shifts to Chanel the burden of proof as to the issue of whether certain handbags identified by Chanel fall within the so-called "overrun" exclusion to counterfeiting – which, to be clear, is the What Goes Around Comes Around LLC Defendants' (collectively referred to as "WGACA" or "Defendants") burden to show. Further, Chanel respectfully submits that its choice of language in its Certification was intended, not to be evasive, but, rather, to comport with the Lanham Act's "overrun" exclusion as defined at 15 U.S.C. §1116(d)(1)(B).

**Procedural History**

The August 21 Order resolved Chanel's motion to compel discovery related to items identified as infringing and counterfeit, by requiring that "[w]ith respect to each item Chanel claims is counterfeit, Chanel shall certify, by an officer with knowledge, that it has admissible evidence that the item was not made in a factory which made genuine Chanel products, but it is so close a copy that it is substantially indistinguishable from the genuine article." [Dkt. No. 146 at ¶ 2.] The Court's August 21 Order further states: "Regardless of WGACA's views about the quality, admissibility or effect of that evidence, WGACA shall then comply with paragraph 2 of the protocol with respect to that item." [*Id.* at ¶ 4.]

Chanel's Certification affirms that "Chanel has admissible evidence that the items listed … were not made in a Chanel-authorized factory, which is permitted to make genuine Chanel products, and feature trademarks that are so close copies, or the products themselves are so close

# SheppardMullin

The Honorable Louis L. Stanton
November 25, 2020
Page 2

copies, that they are substantially indistinguishable from those which appear on genuine Chanel articles." [Dkt. No. 153 at Ex. A at ¶ 2.]

The Court's November 18 Order takes issue with the Certification's use of the words "Chanel-authorized factory, which is permitted to make genuine Chanel products" instead of "factory which made genuine Chanel products," noting that the language in the Certification "might exclude factories which were, but no longer are, making Chanel items still in the market." [Dkt. No. 160 at pp. 1-2.] It then stated that: "Chanel is admonished that any evasion of its terms may be taken as a concession that it cannot meet them, and dismissal of its claims of counterfeit." [*Id.* at p.2.]

### The Court's November 18 Order Impermissibly Shifts the Burden of Proof of the "Overrun" Exclusion to Chanel

The Lanham Act defines a "counterfeit mark" as a "a spurious mark which is identical with, or substantially indistinguishable from" a "mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use." 15 U.S.C.A. §§ 1116(d)(1)(B) and 1127. This definition excludes:

> [A]ny mark or designation used on or in connection with goods or services of which the *manufacturer or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods* or services so manufactured or produced, by the holder of the right to use such mark or designation.

15 U.S.C.A. § 1116(d)(1)(B) (Emphasis added). This exclusion is commonly referred to as the "overrun" exclusion.

Congress made clear prior to the enactment of the Trademark Counterfeiting Act of 1984, that the burden of proof with regard to whether the "overrun" exception applies falls upon the defendant: "As the House Report made clear, *the burden will be on the defendant to prove that the goods or services in question would fall within the overrun exclusion*, under both the criminal and civil provisions." Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. 13676 (1984) (Emphasis added) ("This allocation of the burden of proof is indicated . . . by the phrase introducing the overrun exemption 'but such term does not include . . . .'")[1]

---

[1] A courtesy copy of the Joint Statement is attached to the *Declaration of Bridget J. Russell* ("Russell Decl.), as Exhibit A.

# SheppardMullin

The Honorable Louis L. Stanton
November 25, 2020
Page 3

Based on the language of the August 21 Order, Chanel believed that the Court's requested certification procedure was intended to ensure that, prior to obtaining discovery regarding WGACA's sources of accused counterfeit items, Chanel had to certify that it had admissible evidence of counterfeiting and that the overrun exclusion did not apply. Because Chanel has evidence that the accused items do not fall within the overrun exclusion, Chanel submitted the Certification. However, in light of the Court's November 18 Order and admonishment, Chanel is concerned that the Court's November 18 Order inadvertently shifts the ultimate burden of proof on the affirmative defense of the "overrun" exclusion to Chanel.

It is **WGACA's** burden to show with admissible evidence that the "overrun" exclusion **applies and then** the burden would shift to Chanel to show that the exclusion does not. This is, of course, logical because *only WGACA knows where it obtained the bags in question*.[2] Here, all WGACA has offered is unsupported speculation, which is insufficient to satisfy its burden. *See Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc.*, 2007 WL 74304 at *10 (E.D.N.Y., Jan 8, 2007) ("Defendants also respond to plaintiff's evidence by offering unsupported speculation: defendants suggest that it is "not unreasonable to infer" that Koon Chun has undisclosed factories in mainland China that produced the allegedly counterfeit cans, and that plaintiff "subcontracted companies in China," including New United and Tin Shing, to repackage genuine Koon Chun hoisin sauce in counterfeit cans…. Defendants have failed to produce any affirmative evidence in support of these claims.")[3] Chanel respectfully requests that the Court clarify this point.

### Chanel's Changes to the Certification Language Are Consistent With the Statutory Language of the Overrun Exclusion

The Court's November 18 Order suggests that the language used by Chanel in its Certification (*i.e.*, that the products in question "were not made in a Chanel-authorized factory, which is permitted to make genuine Chanel products") may have been intended to "exclude factories which were, but no longer are, making Chanel items still in the market." Chanel

---

[2] Despite raising the "overrun" exclusion and having the burden on the issue, WGACA has repeatedly refused to produce documentation as to WGACA's source of the accused items at issue pursuant to the Court's May 5 Protocol. Chanel has sought to meet and confer with WGACA on this issue, and will likely need again to move to compel this evidence.

[3] While WGACA has offered its speculation that WGACA's accused items were manufactured in factories authorized by Chanel, several WGACA witnesses have testified that **WGACA has no evidence** supporting that its items were initially purchased from a factory authorized by Chanel. [Russell Decl., Ex. B (excerpts from the Reporter's Transcript of the Deposition of Frank Bober) at 209:6-212:9; 214:24-215:8;221:2-10; *id.*, Ex. C (excerpts from the Reporter's Transcript of the Deposition of Devyn Shaughnessy) at 183:5-187:2; 315:20-316:11; 318:10-25.]

**SheppardMullin**

The Honorable Louis L. Stanton
November 25, 2020
Page 4

respectfully submits that the language, which tracks Section 1116(d)(1)(B), was used by Chanel to ensure that the Certification comports with the scope of the "overrun" exclusion in the Lanham Act, which applies *only* where an item is made by a factory that, at the time of manufacture, was "*authorized to use the mark or designation for the type of goods or services so manufactured or produced.*" 15 U.S.C.A. § 1116(d)(1)(B) (Emphasis added).[4]

Here, as detailed in Ms. Bleys' declaration, the *only* factory authorized to use Chanel's marks for bags bearing the sequence of serial numbers at issue was the Renato Corti factory and Chanel has admissible evidence that the Renato Corti factory did not make the bags bearing the stolen numbers (as affirmed in the Certification).[5] No other factory was ever authorized to use Chanel's marks for bags bearing the serial numbers and authentication cards at issue. Thus, even assuming *arguendo* that the bags sold by WGACA were made by a different Chanel factory (which Chanel has no reason to believe and for which WGACA has provided no evidence), the overrun exclusion would *not* apply. The production of bags bearing the stolen Corti serial numbers and cards by a different Chanel factory would not be an overrun under Section 1116(d)(1)(B) because that factory was *never authorized to use Chanel's marks for bags with those serial numbers*.[6] Thus, Chanel respectfully submits that its Certification is consistent with the statutory language of the "overrun" exclusion.

Chanel respectfully thanks the Court for its consideration on this matter.

---

[4] Chanel also added the language "feature trademarks that are so close copies" for the same reason. The test for whether an item is counterfeit is whether it bears a "*mark* which is identical with, or substantially indistinguishable from" a "mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use." 15 U.S.C.A. §§ 1116(d)(1)(B) and 1127 (Emphasis added). The August 21 Order refers, instead, to an "item" that is "so close a copy that it is substantially indistinguishable from the genuine article." [Dkt. No. 146 at p.2.]

[5] Again, the theft from the Renato Corti factory involved *only* authenticity cards and labels - *not handbags*. The stolen authenticity cards were then (at some point) attached to bags of unknown origin and purchased and then sold by WGACA. While the sale of overrun and non-QC'd bags does not amount to counterfeiting (but, rather, constitute trademark infringement), that is not what occurred here. Here, Chanel's voided authenticity cards and labels bearing Chanel trademarks were, *without its authorization*, affixed to bags and sold. That renders the bags counterfeit – *regardless of where the bags originally came from*. See, e.g., United States v. Farmer, 370 F.3d 435, 437 (4th Cir. 2004) (counterfeiting to purchase irregular and overrun Nike goods and then, without authorization, affix Nike labels to them).

[6] The stolen Corti serial number bags represent 11 of the 12 products at issue in Chanel's Certification. The twelfth item is counterfeit item because the bag type does not comport with the genuine CHANEL-branded item sold bearing the serial number in question.

**SheppardMullin**

The Honorable Louis L. Stanton
November 25, 2020
Page 5

                              Respectfully submitted,

                              Theodore C. Max

TCM:er
cc:    All Counsel of Record