UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CHANEL, INC.,

                    Plaintiff,

      - against -

WGACA, LLC, WHAT COMES AROUND GOES
AROUND LLC d/b/a/ WHAT GOES AROUND COMES
AROUND, MHW PROPERTIES, INC., WGACA WEB,
LLC, PINES VINTAGE, INC., VINTAGE DESIGNS
LTD., and WCAGA LA, LLC,

                    Defendants
-----------------------------------------------------------------X

Case No. 18-cv-2253(LLS)

**DEFENDANTS' OPPOSITION TO CHANEL'S MOTION TO EXCLUDE SUPPLEMENTAL DECLARATION OF HENRY KAHRS, DEFENDANTS' LATE PRODUCTION AND PRECLUDE ANY TESTIMONY OR OPINION**

      WGACA, LLC, WHAT COMES AROUND GOES AROUND LLC d/b/a/ WHAT GOES AROUND COMES AROUND, MHW PROPERTIES, INC., WGACA WEB, LLC, PINES VINTAGE, INC., VINTAGE DESIGNS LTD., and WCAGA LA, LLC (collectively, "WGACA"), hereby provides its Opposition to Plaintiff Chanel, Inc.'s ("Chanel"). Motion to Exclude Supplemental Declaration of Henry Kahrs, Defendants' Late Production and Preclude Any Testimony or Opinions .

**A.   Introduction**

      Chanel's motion seeks to preclude WGACA from introducing (1) a Supplemental Declaration of its financial expert, Henry Kahrs as well as certain additional items that were produced to Chanel consisting of what has been identified as (2) "Divisional" Profit and Loss Statements for WGACA from 2016 through 2023; (3) a sampling of invoices from Rago Bros as to repairs or refurbishment of Chanel items for WGACA; (4) a "Repairs Analysis" prepared by WGACA which includes a breakdown of refurbishment/repairs by cost for WGACA.

B. **Supplemental Declaration of Henry Kahrs**

Absent from Chanel's motion is the fact that in February 2024, after phase 1, Chanel asked WGACA to produce current financial data. Much of Mr. Kahrs' supplemental declaration is analyzing the very data that Chanel asked for in February of 2024 after phase 1. Moreover, Chanel also does not advise the Court that Chanel intends to have its own expert, Dr. Andrew Safir testify about that data, including the divisional data that Chanel complains about. It is axiomatic that Chanel cannot ask for current data, have their own expert testify about that very data and then seek to prohibit WGACA's expert from testifying about the same data that Chanel's expert is testifying about.[1]

The supplemental declaration of Mr. Kahrs addresses not only WGACA's revenues from the sale of Chanel branded items through 2023 (again, this information was provided per Chanel's request) but as noted, also includes P&L's that break down this revenue for each of the divisions that WGACA has for its sales.[2] The total revenue for sales of Chanel branded items reflected in the Divisional P&L's per year is the same for each year as was previously produced by WGACA, which as of February 2024 was through November 2023. The divisionals now provide Chanel with the information through December 2023. As such, the information which was requested by Chanel in February 2024 was provided. (*See*, Email from Chanel's counsel Ms. Russell, 2/2/24, Ex. B),

---

[1] Late Saturday evening (July 13, 2024) we received about 100 new exhibits from Chanel including a new schedule from Dr. Safir that specifically evaluates and relies on WGACA's divisional data that Chanel complains about. (*See* Trial Ex 1627.1 which we have attached as Ex A here).

[2] WGACA has three divisions or channels of distribution: (1) its wholesale business which consists of WGACA's sales to other retailers, (2) WGACA's own retail business- meaning its own brick and mortar stores and (3) its on line ecommerce channel.

As to the existence of the three divisions, contrary to the implication of Chanel's motion, Chanel was aware that WGACA has three divisions for its sales as such was testified to by WGACA's CFO Marcos Rosado in 2021 (Rosado Deposition, 2/2/21, p. 40-41, Ex. C). Prior requests by Chanel were for sales data and financials for the requested time frames and such were produced. In fact, previous P&L statements from WGACA that were produced to Chanel included a breakdown by division. (*See*, Ex. 1185 (P&L's for 2014-2019 and Ex. 168, P&L for 2022 (the divisional information for this Excel document is found on the right side of the Excel spreadsheet which is reflected on a separate attached page at end, Ex. D). So the fact of and amounts of the breakdown by division were previously disclosed. The divisional P&L's provide the same information broken down by the divisions given that Chanel is seeking disgorgement based upon its claims of false advertising and false association and are offered to provide the Court with how in fact the total revenues and profits from the sales of Chanel branded items were broken down by these various channels.

Further, the motion misstates Mr. Kahrs' position as to the "70%" included in its expert Dr. Andrew Safir's reports. First, as will be explored during the examination of Dr. Safir, it is not clear what Dr. Safir means when he references "70%",[3] but the motion suggests that Mr. Kahrs had essentially endorsed Dr. Safir's decision to apply 70% to his profits calculations in each of his reports but such is incorrect. Mr. Kahrs, in each of his first two reports, and in his

---

[3] As was more fully briefed in our phase 2 brief on profits, if a court is inclined to award profits as an equitable remedy, one of the tasks the Court must undertake is to determine what profits earned by the defendant were attributable to the infringing conduct. (Dkt # 474 p. 30). Obviously, not all the profits that any infringer earns will be attributable to infringing conduct in most instances. It is Chanel's burden to establish to the Court what of WGACA's Chanel profits is attributable to the infringing conduct. *Burndy Corp. v. Teledyne Industries, Inc.*, 748 F. 2d. 767, 772 (2d. Cir 1984). Dr. Safir's "70%" analysis is apparently his effort to assist Chanel meet its burden on attribution and Mr. Kahrs is merely pointing out that Dr. Safir had no basis to offer such an opinion and further evaluates the data produced to offer his opinion on attribution.

deposition, stated that he had no opinion as to how much of WGACA's profits could be deemed to be attributable to the alleged wrongful conduct (*See*, Kahrs Report 4/15/21, p. 7 and Kahrs Report, 6/26/23, p. 6, Ex. E). Rather than adopting the 70%, Mr. Kahrs merely used it in order to make a clear comparison of the arithmetic end results of his calculations with those of Dr. Safir who had provided no explanation for the basis for his selection of the 70% figure.

In the recent supplemental declaration, Mr. Kahrs does take issue with the 70% and explains the basis of that position while, at the same time, he provides his evaluation of the total sales of Chanel products (which is the information Chanel asked for in February of 2024) through 2023 using the 70% figure espoused by Dr. Safir to enable a comparison between the two's calculations. (*See*, Schedule 3 to Kahrs Supplemental Declaration, Ex. F).

The declaration does not fundamentally change the entirety of Mr. Kahrs' opinions, but provides up dated analysis of WGACA's sales of Chanel branded products through December 2023 which was requested by Chanel and a breakdown of those revenues into the three divisional categories. In summary, the fact of divisional sales is not new to Chanel (Mr. Rosado previously testified to it and it was contained in various P&L's) and Mr. Kahrs analysis of up to date financial information is clearly appropriate in light of the fact that Chanel asked for that up to date information. Finally, with regard to the 70% that Dr. Safir testified to, Mr. Kahrs never agreed with that proposition and now is simply evaluating the available data and offering his own opinion on the attribution element of a profit analysis. None of this is prejudicial to Chanel nor includes any undue surprise. In the interests of the Court having a full picture of WGACA's financial information, we would request that Mr. Kahrs be permitted to testify on all matters contained in his second declaration.

**C.     Rago Invoices**

Chanel also takes issue with the production of exemplars of Rago Brothers invoices which were provided as merely a sampling of invoices from Rago Bros. First, WGACA did produce invoices from Rago during the litigation. Second, and more importantly, Chanel itself subpoenaed Rago for a deposition to which Rago was required to testify as to the services it performed on numerous Chanel branded products as reflected in Attachment B to the Amended Notice of Subpoena to Rago Brothers Shoe & Leather Repair, LLC (Ex. G). The exemplars produced herein are to provide testimony as to the nature of work performed by Rago for WGACA given Chanel's claims as to the absence of notification of material changes to Chanel branded products as part of its false advertising claims.

**D.    Repair Analysis**

In conjunction with the Rago Bros. exemplars of invoices, WGACA created a spreadsheet from its records to show the percentage of items with repairs under $250, the percentage of items with repairs over $250 and the percentage of items for which no repairs or charges were made. This was a result of claims made by Chanel in the first phase as a part of its false advertising claim that WGACA failed to advise customers of "material" changes to products. The separate values for the first two categories were the results of WGACA speaking with Rago Bros as to the nature and cost of repairs and refurbishing of Chanel branded products.

**E.    Chanel's Motion**

While WGACA did seek to have the disputed production prepared and served more quickly, it was unable to do so which resulted in the delay. Nonetheless, the prejudice that Chanel claims is overstated. As noted above, the report, while it includes a section as to a comparison of WGACA's sales data and its adverting spend, was data that had already been provided. The issue as to the "70%" is a red herring given that Mr. Kahrs did not endorse the amount but rather used it to make a

direct comparison with calculations of Dr. Safir. The Rago invoices are just exemplars and Chanel took Rago Bros. deposition years ago and inquired about similar invoices and their meaning. Similarly, the analysis spreadsheet merely reviews data as to the percentage of Chanel branded products which had "repair" costs under $250, over $250 and no repair costs whatsoever.

Accordingly, WGACA respectfully requests that the motion be denied.

Dated: July 14, 2024

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

/s/ Daniel C. DeCarlo
Daniel C. DeCarlo, Esq. (Pro Hac Vice)
Thomas S. Kidde, Esq. (Pro Hac Vice)
Sasha Shariati, Esq. (Pro Hac Vice)
Peter T. Shapiro, Esq.

77 Water Street, Suite 2100
New York, New York 10005
(212) 232-1300

Yale Galanter, Esq. (Pro Hac Vice)
Galanter Law, P.A.

Amy Mason Saharia (Pro Hac Vice)
Williams & Connolly, LLP

*Attorneys for Defendants WGACA*

**CERTIFICATE OF SERVICE**

Daniel C. DeCarlo, an attorney duly admitted to practice Pro Hac Vice before this Court, certifies that on July 14, 2024, I caused a true and correct copy of the foregoing DEFENDANTS' OPPOSITION TO CHANEL'S MOTION TO EXCLUDE SUPPLEMENTAL DECLARATION OF HENRY KAHRS, DEFENDANTS' LATE PRODUCTION AND PRECLUDE ANY TESTIMONY OR OPINION to be served via Electronic Mail.

                                                */s/ Daniel C. DeCarlo*
                                                Daniel C. DeCarlo