ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X
CHANEL, INC.,

                    Plaintiff,

        - against -


WGACA, LLC; WHAT COMES AROUND GOES
AROUND LLC d/b/a WHAT GOES AROUND
COMES AROUND; MHW PROPERTIES, INC.;
WGACA WEB, LLC; PINES VINTAGE,
INC.; VINTAGE DESIGNS LTD.; and
WCAGA LA, LLC,

                    Defendants.
- - - - - - - - - - - - - - - - - - -X

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:                           │
│ DATE FILED:    6/26/25           │
└─────────────────────────────────┘
```

18 Civ. 2253 (LLS)

OPINION & ORDER

        This is a trademark infringement case between plaintiff

Chanel, Inc., and defendants WGACA, LLC; What Comes Around Goes

Around LLC d/b/a What Goes Around Comes Around; WGACA Web, LLC;

and WCAGA LA, LLC (collectively, "WGACA"). This opinion resolves

all remaining post-trial motions.

                        **BACKGROUND**

        The Court assumes familiarity with the facts and procedural

history of this case from its prior opinions.

        From January 9, 2024, to February 6, 2024, this Court

presided over a jury trial in which Chanel brought Lanham Act

claims for trademark infringement, false association, unfair

competition, and false advertising against WGACA. On February 6,

2024, the jury found WGACA liable on all claims and awarded

Chanel $4,000,000 in statutory damages pursuant to 15 U.S.C.
§ 1117(c)(2) (Dkt. No. 407). The Court held a bench trial on
equitable remedies from July 15, 2024, to July 19, 2024, after
which Chanel moved for entry of an injunction against WGACA and
disgorgement of WGACA's profits (Dkt. No. 445). On February 26,
2025, the Court issued a permanent injunction and final judgment
instructing Defendants to disgorge $12,739 in profits (Dkt. No.
505). On March 12, 2025, Chanel moved for attorneys' fees and
costs (Dkt. No. 511). On March 26, 2025, WGACA moved for
judgment as a matter of law and a new trial pursuant to Rules 50
and 59 of the Federal Rules of Civil Procedure (Dkt. No. 519)
and requested that the Court enter findings of fact and
conclusions of law in support of its disgorgement judgment (Dkt.
No. 518).

**DISCUSSION**

Before the Court are the parties' various post-trial
motions. The Court addresses each motion in turn.

## I.    ATTORNEYS' FEES

On March 12, 2025, Chanel moved for attorneys' fees and
costs (Dkt. No. 511). For the reasons that follow, the Court
awards costs but not attorneys' fees.

The Lanham Act provides that "[t]he court in exceptional
cases may award reasonable attorney fees to the prevailing

-2-

party." 15 U.S.C. § 1117(a). Previously, a "finding of willfulness determine[d] the right to attorney's fees." Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849 (2d Cir. 1995), abrogated by 4 Pillar Dynasty LLC v. New York & Co., Inc., 933 F.3d 202 (2d Cir. 2019). However, the Second Circuit has since adopted the Supreme Court's definition of an exceptional case as "'one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'. . . without tying the determination expressly to a finding of willfulness." 4 Pillar Dynasty LLC v. New York & Co., Inc., 933 F.3d 202, 215 (2d Cir. 2019) (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014)). "Octane Fitness establishes no presumption — rebuttable or otherwise — that cases involving willful infringement are necessarily 'exceptional.'" Id. at 216.

District courts have "wide latitude" under this standard and are encouraged to engage in a "case-by-case exercise of their discretion, considering the totality of the circumstances." Id. at 215. "Courts may consider factors including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of

-3-

compensation and deterrence." Id. (internal quotations and citations omitted). Since Octane Fitness, multiple judges in this District have denied requests for attorneys' fees in cases of willful infringement. See, e.g., Mattel, Inc. v. AnimeFun Store, 2024 WL 4635327, at *8 (S.D.N.Y. Oct. 30, 2024) (rejecting request for attorneys' fees despite willful infringement); Lexington Furniture Indus., Inc. v. Lexington Co., AB, 2023 WL 2707114, at *9-10 (S.D.N.Y. Mar. 30, 2023) (same); Esposito v. Info. Tech. Corp. of Tri-States, 2022 WL 17095252, at *3 (S.D.N.Y. Nov. 21, 2022) (same); Travel Leaders Grp., LLC v. Corley, 2019 WL 6647319, at *14 (S.D.N.Y. Dec. 5, 2019) (same), report and recommendation adopted, 2022 WL 950957 (S.D.N.Y. Mar. 30, 2022).

This is not an exceptional case. Trademark infringement is a familiar matter to every judge of this Court, and this dispute did not present particularly complex legal questions. The charge to the jury took just under an hour, and the verdict was received the next day at 2:15 p.m. Chanel lays great emphasis on two facts: that the jury made ten separate findings of willfulness against WGACA, and that the verdict was unanimous. But willfulness no longer determines awards of attorneys' fees in the Second Circuit, and the verdict form asked the question ten times. There was no novelty in the verdict being unanimous, as all verdicts in this Court are unanimous. F.R.C.P. 48.

-4-

While there was sufficient evidence at trial for the jury to find willful infringement, this was not a case of flagrant violations. As this Court has repeatedly pointed out, it is in WGACA's best interests to sell genuine CHANEL-branded goods. Though trial uncovered instances of willful infringement, those were a small percentage of WGACA's overall sales of CHANEL-branded items, which were mostly in the bounds of the Lanham Act. Chanel is right to point out that this case was not merely about isolated incidents of infringement, but also about WGACA's false association and false advertising, which the jury also found to be willful. However, these actions are better deterred by the existing injunction than by an award of attorneys' fees. An award of attorneys' fees will do no more to deter WGACA than the multimillion-dollar jury verdict already has.

Chanel also argues that WGACA acted in bad faith. However, both parties' actions reflected the normal tensions that arise over the course of more than six years of contentious litigation. Though they may have disagreed, both sides presented plausible legal arguments and defenses, and the case was not litigated in an objectively unreasonable way. Chanel is correct to point out WGACA's tendency to exaggerate and stretch the truth, but this occurred to some degree on both sides, and it was not so flagrant as to make this case "stand[] out from others." Octane Fitness, 572 U.S. at 554. Chanel's application

-5-

for attorneys' fees is denied.

Nonetheless, the Lanham Act allows prevailing plaintiffs to recover for "the costs of the action." 15 U.S.C. § 1117(a). Chanel requests the following costs: i) ESIH hosting costs of $197,910.44; ii) ESIH processing costs of $58,514.75; iii) Lexis fees of $13,556.70; and iv) Westlaw fees of $290,997.08, totaling $560,978.97. Max Decl. (Dkt. No. 512). Sheppard Mullin detailed each of these costs on its invoices to Chanel. Id. at Ex. 1. These are also the types of costs routinely awarded by courts. See, e.g., Carrington v. Graden, 2020 WL 5758916, at *17 (S.D.N.Y. Sept. 28, 2020) (awarding costs for "electronic discovery software and data hosting fees"); Ahava (USA), Inc. v. J.W.G., Ltd., 286 F. Supp. 2d 321, 325 (S.D.N.Y. 2003) (awarding "costs related to LEXIS charges"). These costs are therefore reasonable.

For the foregoing reasons, Chanel's motion for attorneys' fees is denied, and Chanel is awarded $560,978.97 in costs.

## II.  FEDERAL RULES OF CIVIL PROCEDURE 50 AND 59

On March 26, 2025, WGACA moved for judgment as a matter of law and a new trial pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure (Dkt. No. 519). For the reasons that follow, WGACA's motion is denied.

Federal Rule of Civil Procedure 50 entitles a defendant to

judgment as a matter of law where "a party has been fully heard
on an issue during a jury trial and the court finds that a
reasonable jury would not have a legally sufficient evidentiary
basis to find for the party on that issue." F.R.C.P. 50(a)(1).
Motions for judgment as a matter of law may be renewed after the
entry of judgment and are governed by the same standard.
F.R.C.P. 50(b). "[A] Rule 50 motion must be denied unless the
evidence is such that, without weighing the credibility of the
witnesses or otherwise considering the weight of the evidence,
there can be but one conclusion as to the verdict that
reasonable [jurors] could have reached." Cross v. New York City
Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005) (internal
quotations and citations omitted). "A movant's burden in
securing Rule 50 relief is particularly heavy after the jury has
deliberated in the case and actually returned its verdict." Id.

Federal Rule of Civil Procedure 59 states that "[t]he court
may, on motion, grant a new trial on all or some of the issues—
and to any party . . . after a jury trial, for any reason for
which a new trial has heretofore been granted in an action at
law in federal court." F.R.C.P. 59(a)(1)(A). This includes where
a verdict is against the weight of the evidence. Raedle v.
Credit Agricole Indosuez, 670 F.3d 411, 417 (2d Cir. 2012). "A
grant of a new trial on the ground that the verdict was against
the weight of the evidence is appropriate if the jury has

-7-

reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." Farrior v. Waterford Bd. of Educ., 277 F.3d 633, 634 (2d Cir. 2002) (internal quotations and citations omitted). The Court "may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner." Raedle, 670 F.3d at 418. "However, our precedent counsels that trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge should rarely disturb a jury's evaluation of a witness's credibility and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." Id. (internal quotations and citations omitted). "Where the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." Id. (internal quotations and citations omitted).

WGACA requests that the Court grant judgment as a matter of law or a new trial on the issue of willful counterfeiting with respect to the 13 Corti bags and the brown pouch. WGACA's primary argument about the Corti bags is the same one its attorneys attempted to advance at trial, namely that "goods produced in a factory authorized by the mark holder to make the type of good at issue are not counterfeit, even if the mark

-8-

holder did not authorize the production of the specific goods."
WGACA Br. at 4-5 (Dkt. No. 520). However, as Chanel points out,
WGACA presented no evidence to support its proposition that the
bags bearing voided Corti serial numbers were actually made in a
Chanel factory. WGACA called zero witnesses at trial and did not
elicit testimony proving this point on cross-examination. The
only references to WGACA's unfounded theory were through
statements from its attorneys, which are decidedly not evidence.
Not surprisingly, WGACA's briefs cite to only three places in
the record to support this argument, all of which were
statements from attorneys. Trial Tr. (Dkt. No. 433 at 1740:3-9,
1742:23-1743:1; Dkt. No. 435 at 2039:6-17).

The testimony of Chanel's witnesses consistently and
forcefully rebutted WGACA's assertions about the Corti bags. The
jury heard weeks of testimony about the Orli system and the
importance of Chanel Serial Numbers in determining whether a
handbag is genuine or counterfeit. Id. (Dkt. No. 531 at 364:17-
25, 365:7-16, 381:11-16; Dkt. No. 415 at 612:6-613:5; Dkt. No.
425 at 1312:4-5; Dkt. No. 419 at 766:18-767:1, 814:7-13; Dkt.
No. 429 at 1479:23-1480:8; Dkt. No. 433 at 1779:16-1780:1,
1783:19-22). The jury also learned that Chanel Serial Numbers,
stickers, and authenticity cards are only linked to handbags in
the Orli system once they have gone through quality control
procedures. Id. (Dkt. No. 531 at 335:1-11, 343:17-344:20, 364:7-

15; Dkt. No. 417 at 664:7-20; Dkt. No. 419 at 785:20-25, 806:4-807:1). Chanel's witnesses testified that no genuine Chanel handbags were ever authorized to be made with the stolen Chanel Serial Numbers, as they were voided after the theft, before they could be associated with any authorized handbags. Id. (Dkt. No. 415 at 615:2-617:13; Dkt. No. 417 at 672:4-14; Dkt. No. 427 at 1372:13-21, 1424:16-23; Dkt. No. 531 at 339:15-23, 340:17-342:2, 359:13-22); Trial Exs. 51, 90. Contrary to WGACA's assertions, there was no evidence presented that handbags, not authenticity cards, were stolen from the Corti factory. Trial Tr. (Dkt. No. 531 at 359:13-20); Trial Ex. 90. This is bolstered by the fact that the stolen authenticity cards were later found in counterfeiting raids. Trial Tr. (Dkt. No. 419 at 813:6-22); Trial Ex. 1261. It is also hard to believe that a theft of 30,000 handbags, which are much larger than authenticity cards, could go on unnoticed. See Trial Tr. (Dkt. No. 427 at 1450:23-1451:2; Dkt. No. 531 at 359:13-360:3) (noting small size of authenticity cards and quick nature of theft). In sum, WGACA's arguments about the Corti bags are mere speculation by its attorneys.

WGACA also argues that bags with genuine Chanel hardware, including Exhibit 1369, cannot be counterfeit, but Chanel clearly disproved this at trial. Chanel presented extensive witness testimony about how some counterfeit bags, including

"Frankenstein bags," can contain genuine hardware. Id. (Dkt. No. 413 at 481:18-23, 490:16-20, 493:20-494:3; Dkt. No. 419 at 849:11-16). Mr. Bravo also highlighted other nongenuine aspects of the bag independent from its hardware. Id. (Dkt. No. 425 at 1305:17-20, 1309:12-13, 1323:16-17) (including CC logo stitching, thread color, chain length, leather color). WGACA cherry-picks Mr. Bravo's testimony and lays great weight on his erroneous statements about the zipper pull, but he later corrected himself. Id. (Dkt. No. 425 at 1307:4-1308:11, 1325:1-17). The jury was aware of these inconsistencies and still found for Chanel. It is up to the jury, not the Court, to make credibility determinations. Raedle, 670 F.3d at 418.

    The jury also heard sufficient evidence to conclude that the brown pouch, Exhibit 1374, was counterfeit. Chanel's witnesses testified that 10218184 is one of the most pirated Chanel Serial Numbers. Trial Tr. (Dkt. No. 419 at 895:20-896:1). Chanel also showed Orli records for the genuine 10218184 handbag, which was a different style of bag that was made in 2005. Id. (Dkt. No. 433 at 1805:24-1806:8); Trial Exs. 51, 1010B. WGACA argued that the pouch contained a genuine repair certificate from Chanel, making it authentic. But that repair occurred in 2004, before the authentic bag was sold, and Chanel found no repair record for a bag with the 10218184 serial number. Trial Tr. (Dkt. No. 419 at 810:19-811:6); Trial Exs.

123, 123A. WGACA explained this discrepancy by asserting that the serial number was likely a typo or database error, but WGACA failed to produce the actual serial number or call a witness to testify on the matter, instead reading in the deposition of Sun Li. Trial Tr. (Dkt. No. 433 at 1806:14-23). It was reasonable for the jury to conclude that the pouch was counterfeit in light of limited evidence to the contrary.

There was also sufficient evidence of WGACA's willfulness. WGACA contends that it could not possibly have known that any of the bags were counterfeit without access to the Orli system or information on the Corti theft. Though WGACA is correct that lack of access to the Orli system makes it more difficult to recognize counterfeits, Chanel's witnesses identified multiple instances where WGACA knew or should have known that certain items were nongenuine and moved forward with sales activity anyway. The jury heard about WGACA's sale of multiple handbags after Chanel notified WGACA that they bore voided serial numbers, including the 191 and 828 bags. Id. (Dkt. No. 415 at 615:2-9; Dkt. No. 417 at 672:4-14; Dkt. No. 423 at 1144:22-1146:5, 1219:2-4; Dkt. No. 435 at 2021:10-13); Trial Exs. 1010A-D, 1012-13, 1016, 1063, 1234. Additionally, the jury learned about gaps in WGACA's authentication and recordkeeping procedures. Trial Tr. (Dkt. No. 423 at 1094:7-22, 1095:9-13, 1096:4-1097:13). The jury also saw WGACA's seemingly nonchalant

response to Chanel's legal concerns, including WGACA CEO Seth Weisser saying that Chanel's cease and desist letter was "Very funny. So legal." Trial Ex. 1234. WGACA insisted throughout trial preparation that willfulness was not a consideration for the jury and, as a result, called no witnesses and presented a minimal defense on this issue. The jury's conclusion was reasonable in light of this evidence.

For the foregoing reasons, WGACA's motion for judgment as a matter of law and a new trial pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure is denied.

## III. STATUTORY DAMAGES

In the absence of judgment as a matter of law or a new trial on willful counterfeiting, WGACA requests that the Court lower the statutory damages award. The Court declines to do so.

15 U.S.C. § 1117(c) allows for statutory damages in counterfeiting cases of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold . . . [or] if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold." At trial, the jury found that WGACA engaged in willful counterfeiting and awarded Chanel $4 million dollars in statutory damages, representing $2 million for the CC logo and $2 million for the

-13-

Chanel name. WGACA urges the Court to lower the statutory damages award through remittitur or on due process grounds, arguing that it is excessive and not supported by the evidence.

"Jury verdicts should be disturbed with great infrequency," and "the calculation of damages is the province of the jury." Beastie Boys v. Monster Energy Co., 66 F. Supp. 3d 424, 436, 462 (S.D.N.Y. 2014) (internal quotations and citations omitted). "Because Congress specifically determined the appropriate statutory range for damages in trademark . . . actions, a court's review of such a reward is extraordinarily deferential," and "[i]n the specific context of statutory damages under the . . . Lanham Act, Congress has placed an upper bound on the damages that a jury can award, which mitigates the risk of a truly untethered award." John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606, 635 (S.D.N.Y. 2018) (internal quotations and citations omitted).

The award here is within the range prescribed by Congress, and the jury took great care to ensure that was so. During deliberations, they specifically asked about the "willful infringement maximum," evincing a clear intent to award the maximum amount of damages allowed under the statute. Jury Note #4 (Dkt. No. 405); Trial Tr. (Dkt. No. 443 at 2264:12-19). "[T]he question is not what this Court would award were it deciding the question itself; the question is whether the jury's

-14-

award is so excessive that the Court should intrude on its prerogative to set damages." Agence France Presse v. Morel, 2014 WL 3963124, at *15 (S.D.N.Y. Aug. 13, 2014). The answer to that question is no.

## IV. DISGORGEMENT OF PROFITS

On February 26, 2025, the Court awarded Chanel $12,739 in profits (Dkt. No. 505). WGACA sought findings of fact and conclusions on law in support of that judgment (Dkt. No. 518).

"The award of profits is justified by three rationales: (1) to deter a willful wrongdoer from doing so again; (2) to prevent the defendant's unjust enrichment; and (3) to compensate the plaintiff for harms caused by the infringement." Merck Eprova AG v. Gnosis S.p.A., 901 F. Supp. 2d 436, 457 (S.D.N.Y. 2012), aff'd, 760 F.3d 247 (2d Cir. 2014). Courts in the Second Circuit consider various equitable factors when deciding whether to grant a successful plaintiff an award of a defendant's profits under the Lanham Act, including: "(1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) the availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) any delay by plaintiff; and (5) plaintiff's clean (or unclean) hands." 4 Pillar Dynasty LLC v. New York & Co., Inc., 933 F.3d 202, 214 (2d Cir. 2019). An award is

-15-

typically for "net profits, but the infringer bears the burden
to prove any deductions for its costs from the gross revenues
attributable to its infringement." Id. at 214 n.11 (internal
quotations and citations omitted). An infringer must demonstrate
a "sufficient nexus between each expense claimed and the sales
of the unlawful goods" and "propos[e] a fair and acceptable
formula for allocating a portion of overhead expenses to the
infringing items at issue." Hamil Am. Inc. v. GFI, 193 F.3d 92,
107 (2d Cir. 1999) (internal quotations and citations omitted).

The Court's award here was largely informed by the second
equitable factor, the availability and adequacy of other
remedies. In addition to the disgorgement award, the Court issued
a permanent injunction limiting a range of WGACA's conduct with
respect to CHANEL-branded products, including restrictions on
product listings, disclaimers, hashtags, discount codes,
photographs, props, and other safeguards on the advertisement,
distribution, and sale of CHANEL-branded products. Injunctive
relief is the most appropriate and effective remedy for Chanel's
false association, unfair competition, and false advertising
claims, particularly given the lack of tangible economic harm to
Chanel.

Nonetheless, WGACA would be unjustly enriched if it were
permitted to retain profits from the sale of specific infringing
items. The $12,739 disgorgement figure represents net profits

-16-

from the sale of 51 CHANEL-branded handbags bearing voided Chanel Serial Numbers and 779 CHANEL-branded counter-support items, all of which the jury found were not authorized for sale by Chanel. This figure excludes WGACA's sales of other CHANEL-branded items, as their connection to the infringing conduct is more remote and difficult to quantify, making injunctive relief a more appropriate remedy. The Court accepts WGACA's cost deductions, as they have a sufficient nexus to the sale of the infringing products and a practical method of allocation.

### CONCLUSION

For the foregoing reasons, the parties' post-trial motions are resolved in accordance with the rulings above.

So ordered.

Dated:    New York, New York
          June 26, 2025

_Louis L. Stanton_

LOUIS L. STANTON
U.S.D.J.